**UNITED STATES, Appellant and Cross-Appellee,**

v.

**Larry J. GRIFFIN, Staff Sergeant, U. S. Air Force, Appellee and Cross-Appellant.**

No. 31,826.
ACM 21876.

U. S. Court of Military Appeals.

Nov. 19, 1979.

For Appellee and Cross-Appellant: *Captain Martin F. McAlwee* (argued); *Colonel Jerry E. Conner, Colonel Robert W. Norris, Major Byron D. Baur* (on brief).

For Appellant and Cross-Appellee: *Major John A. Cutts III* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

COOK, Judge:

At approximately 0500 hours on January 5, 1975, the accused drove his automobile from the Netherlands to the Federal Republic of Germany. He was accompanied by Sergeant Nidever. As he chose a border

crossing point that was closed at this early morning hour, he was stopped by German customs officials. A preliminary search of his automobile produced nothing. However, the officials obtained the aid of drug detection dogs and these dogs alerted on the left side of the rear seat of the car. Several screws were removed from a panel in this area and hashish and cocaine were discovered. Wrongful possession of these substances was charged in specifications 1 and 2, Charge I. A subsequent search of accused's person revealed a quantity of methamphetamine, possession of which was made the subject of the specification of Charge II.

The defense called Sergeant Nidever as a witness. After some questions to which Nidever responded, defense counsel asked if Nidever had placed the drugs in the accused's automobile. Nidever refused to answer, asserting his rights under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831. Trial recessed. About 2 hours later, an out-of-court hearing was held. At the hearing, trial counsel tendered to the trial judge a "priority message" to the effect that Sergeant Nidever had been granted immunity. The message was marked as an appellate exhibit and attached to the record of trial. The judge questioned Sergeant Nidever, who acknowledged he had been granted testimonial immunity, and he was then willing to testify. However, defense counsel asserted he had no further questions to ask Nidever. The judge indicated he would allow trial counsel to "cross examine" the witness as to the matters elicited by defense counsel before Nidever had invoked his rights under Article 31.

Trial resumed before the court members, and Sergeant Nidever testified to his involvement with the contraband. He asserted he and the accused had gone to a bar in Amsterdam, but the accused left for a period of approximately 45 minutes to 1 hour. Shortly after the accused's departure, he was asked by some Europeans if he desired to purchase drugs. He accompanied these Europeans to an apartment building, where he purchased hashish and cocaine for $900.00. He took the contraband to the accused's automobile, which was parked on a street, and gained access to the interior by placing a knife through a window and opening it with the knife blade. He unscrewed the panel in the rear, secreted the hashish and cocaine under the seat, replaced the screws, and then returned to the bar before the accused's return. This version of the incident was contrary to a pretrial statement in which Nidever had asserted he had no knowledge of the drugs. Trial counsel then questioned him as to his intentions in taking a large sum of money to Amsterdam, and the military judge declared him to be a government witness for this purpose.

Nidever maintained that he merely wanted to buy some clothes and "have a good time." The defense counsel declared he did not desire to ask any further questions of Nidever and, accordingly, he was excused. Shortly thereafter, the following colloquy occurred between counsel and the judge concerning the grant of immunity:

TC: At this time I'm going to ask for a 39(a) session.

MJ: Concerning what?

MJ: Could you just briefly tell us what it is about.

TC: It has to do with Appellate Exhibit 7. I just simply want the court to be notified as to the contents of Appellate Exhibit 7—one way or the other.

DC: Your Honor, at this point in the proceedings, I don't believe that is appropriate. But, if it must be pursued, defense will argue the point and discuss the point in a 39(a) session. The government is now in rebuttal.

MJ: I don't think a 39(a) will be necessary and I don't think argument will be necessary.

MJ: Gentlemen, at this time, I will inform you that Sergeant Nidever, who testified previously, did so under a grant of immunity.

Trial defense counsel expanded on his objection as follows:

The defense wants to enter on the record an objection to the court's being informed of the grant of immunity inasmuch as we are in the rebuttal phase of the trial and the government did not bring this matter up when the witness was on the stand. What we have, in effect, Your Honor, is the only substantive information coming from an individual was solicited by the government after the grant of immunity was presumably brought to his attention and made a matter of record in this court. Then, after doing that, the government turned right around and wants to bring to the court's attention the fact that the man had a grant of immunity after the individual is off the stand.

The Air Force Court of Military Review held that the military judge's remark to the court members that Sergeant Nidever had been granted immunity constituted testimony favorable to the prosecution, and he was thereby disqualified under Article 26(d), UCMJ, 10 U.S.C. § 826(d), because he was, in effect, a witness for the prosecution. While the court noted that trial defense counsel did not expressly object to the military judge's continued participation in the case, it perceived his assertion that the members should not be advised of the grant of immunity as barring a finding of waiver of the judge's disqualification. *See United States v. Griffin,* 1 M.J. 784 (A.F.C.M.R. 1976).

Both the accused and the Judge Advocate General of the Air Force question the decision of the Court of Military Review. The Judge Advocate General has certified the following questions to this Court:

I. WAS THE COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT THE MILITARY JUDGE BECAME A WITNESS FOR THE PROSECUTION AND WAS DISQUALIFIED FROM FURTHER PARTICIPATION IN THE CASE?

II. WAS THE CONVENING AUTHORITY DISQUALIFIED FROM ACTING ON THE CASE ON THE GROUNDS THAT HE HAD GRANTED IMMUNITY TO A DEFENSE WITNESS?

We granted review of the following assignments of error in the petition of the accused (5 M.J. 1063):

I. WHETHER THE EVIDENCE WAS SUFFICIENT TO ESTABLISH THE ACCUSED'S GUILT BEYOND A REASONABLE DOUBT SO AS TO WARRANT A FINDING OF GUILTY ON THE SPECIFICATIONS OF CHARGE I.

II. WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE COURT ON THE MEANING AND EFFECT OF A GRANT OF IMMUNITY.

III. WHETHER THE OFFENSES ARE MULTIPLICIOUS FOR SENTENCING PURPOSES.

 As to the first certified issue, I have serious reservations whether the military judge became a witness by simply summarizing the import of the exhibit presented to him. The fact of immunity was uncontested at the trial level. *See United States v. Henderson,* 11 U.S.C.M.A. 556, 29 C.M.R. 372 (1960). Moreover, the matter concerned not just a fact that might bear upon the witness' credibility, but presented a facet of law that, I believe, a judge could properly bring to the court members' attention to expel the likelihood of confusion from the conflict between the witness' assertion of a right to remain silent and his reappearance as a witness.[1] In any event, I believe that, even if the judge's declaration was a ground for disqualification, the failure of defense counsel to ask for recusal precludes reversal. Defense counsel objected only to the advice to the members of the witness' immunity; he neither directly nor impliedly asserted that the judge was disqualified because he had overruled the defense objection and had informed the mem-

---

1. The wisdom of, and the need for, the instruction became apparent later. After some deliberation on the findings, the court members returned to the courtroom to request a reading of Nidever's testimony and the "instructions regarding Nidever's Article 31 plea."

bers on the subject. Knowing that a ground of disqualification exists but refusing to interpose timely objection constitutes a waiver of the disqualification as a basis for reversal. *United States v. Airhart*, 23 U.S.C.M.A. 124, 48 C.M.R. 685 (1974); *United States v. Wolfe,* 8 U.S.C.M.A. 247, 24 C.M.R. 57 (1957). I would, therefore, answer the first certified question in the negative.

Turning to the effect of the grant of immunity upon the convening authority's qualification to review the record of conviction, numerous cases of this Court have held that disqualification to review results from a grant of immunity to a witness. Illustrative is *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 65, 48 C.M.R. 534, 536 (1974), in which the Court said:

> The reason for the disqualification is that such action by a convening authority renders his impartiality suspect with reference to weighing the testimony of the witness to whom he granted immunity or clemency.

The present case is different from the earlier cases: in each of the latter, the grant was to a prosecution witness; here, it was to a defense witness. An apparent predisposition on the part of the convening authority to credit the testimony of a defense witness obviously operates to the advantage of the accused. This may explain why the issue was not raised by the accused before the Court of Military Review and why, in this Court, appellate defense counsel have conceded that the second certified question should be answered in the negative. But, something more about the matter needs to be said. All the earlier cases spoke of the improper influence a grant of immunity may have upon the "impartiality" of the reviewing authority. If the Uniform Code required an absolutely impartial reviewing authority, then one with a predisposition to accept credibility of a defense witness would simply not do. *See United States v. Taylor*, 5 U.S.C.M.A. 523, 18 C.M.R. 147 (1955); *United States v. Gordon*, 1 U.S.C.M.A. 255, 261, 2 C.M.R. 161, 167 (1952). However, the Uniform Code ac-

cords an accused an advantage that has no parallel in the civilian courts—he may have his conviction and sentence set aside by the reviewing authority for any or no reason. Article 64, UCMJ, 10 U.S.C. § 864; *United States v. Massey*, 5 U.S.C.M.A. 514, 520, 18 C.M.R. 138, 144 (1955). Judge Brosman has aptly observed that, as to matters that operate to the accused's advantage, the reviewing authority may consult " 'a guy named Joe.' " *United States v. Coulter*, 3 U.S.C.M.A. 657, 663, 14 C.M.R. 75, 81 (1954). But, in affirming findings of guilty and a sentence, the reviewing authority must act on the record alone and without predisposition or bias *against* the accused. Consequently, I perceive no disqualification from the earlier grant of immunity to a witness who testified for the defense. That conclusion, however, does not end the necessary inquiry.

As noted in the recital of the facts, toward the close of Nidever's cross-examination trial counsel asked certain questions the nature of which led the trial judge to rule that, as regards that part of Nidever's testimony, Nidever became "a witness for the prosecution." In that part of his testimony, the only new matter was that Nidever had initially planned to go to Amsterdam for a three or four day period with a person other than the accused to have a "good time . . . and purchase clothing"; he implied that this plan had aborted. The information is so lacking in self-incrimination and so peripheral to Nidever's crucial representation that he had concealed the prohibited substances in the accused's car, in the accused's absence and without his apparent knowledge, that arguably the government's portion of his testimony should have been excluded as irrelevant. In any event, assuming that this testimony is covered by the grant of immunity, the resulting inference is that, because he had granted immunity to Nidever, the reviewing authority would be predisposed to credit Nidever's testimony. Nidever's testimony exonerated the accused. Consequently, any predisposition influence could only operate to the accused's advantage. That the presumed

predisposition failed to dissuade the reviewing authority from finding that the evidence established accused's guilt beyond a reasonable doubt does not alter the fact that it was a predisposition in favor, not opposed, to the accused. In this situation, I do not see that the reviewing authority was disqualified by his earlier grant of immunity to the defense witness. I would answer the second certified question in the negative.

■ Turning to the accused's assignments of error, the first challenges the sufficiency of the evidence to support two of the three offenses on which he stands convicted. In *United States v. Wilson*, 7 M.J. 290 (C.M.A.1979), the Court held the evidence was insufficient to sustain a conviction for the possession of LSD and marijuana found in an apartment in which the appellant was present but which was leased to another person. The Court concluded the record contained no evidence giving rise to an inference that the appellant exercised the requisite dominion or control over the contraband. *Id.* at 295. In the present case, two items of contraband were found secreted under the rear seat of an automobile registered to, and operated by, the accused. An additional item of contraband was found on accused's person. While Nidever, testifying for the defense, claimed exclusive control of two items under the car seat, the court-martial members could reasonably reject that testimony. In rejecting Nidever's testimony, they could conclude from accused's control over the automobile that he also had control over the substances concealed under the seat. In my opinion, the evidence is sufficient to support the findings of guilty of specifications 1 and 2, Charge I.

■ The second assignment of error is that the military judge committed reversible error by failing to instruct the court members that Sergeant Nidever could be prosecuted for perjury, even though he had to testify under a grant of immunity. No such instruction was requested at trial. The Court has held that the trial judge has the primary responsibility to instruct on fundamental issues, and the failure to discharge that responsibility may constitute reversible error, even in the absence of a defense objection. *United States v. Gaiter*, 1 M.J. 54 (C.M.A.1975); *United States v. Graves*, 1 M.J. 50 (C.M.A.1975). The alleged omission in this case is not in regard to a fundamental issue, but as to the collateral consequence of a grant of immunity to a defense witness. I do not consider that matter to require *sua sponte* instruction by the military judge and, therefore, this case is not within the doctrine of *Gaiter* and *Graves*. Consequently, assuming, without deciding, the correctness of appellate defense counsel's contention that the grant of immunity here did not preclude prosecution for perjury, no reversible error appears.

■ Appellant's last assignment of error alleges another instructional deficiency. This consists of the omission of an instruction that the offenses were multiplicious for sentencing purposes. Defense counsel argued that the offenses were not separately punishable and asked that the members be so instructed, but the judge rejected the contention, and computed the total maximum punishment on the basis that the three offenses were separate. The Court has held that the simultaneous possession of different drugs constitutes only one offense for the purpose of sentence. *United States v. Hughes*, 1 M.J. 346, 349 (C.M.A.1976). *Hughes* was decided after the Court of Military Review's consideration of this case. Moreover, because of its action on the judge's disqualification issue, the Court did not consider the appropriateness of the sentence approved by the convening authority. These circumstances warrant reexamination of the sentence by that Court. For the reasons indicated, the decision of the United States Air Force Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force for submission to the Court for reassessment of the sentence.

Chief Judge Fletcher concurs in the result.

Judge Perry did not participate.