**UNITED STATES, Appellee,**

v.

**Private First Class Arthur M. PHINIZY, U.S. Army, Appellant.**

No. 39,398.
CM 438655.

U. S. Court of Military Appeals.

Oct. 26, 1981.

For Appellant: *Captain James F. Nagle* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Charles A. Byler* (on brief).

For Appellee: *Major Robert B. Williams* (argued); *Colonel R. R. Boller, Major Douglas P. Franklin* (on brief); *Major Ted B. Borek.*

Opinion of the Court

FLETCHER, Judge:

The appellant was tried by general court-martial in the Federal Republic of Germany on August 7, 1979. Contrary to his pleas, he was found guilty of the wrongful sale of cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. His general court-martial composed of members sentenced him to a bad-conduct discharge, 9 months' confinement at hard labor, forfeiture of all pay and allowances and reduction to E–1. The convening authority approved the findings and sentence. The United States Army Court of Military Review affirmed in an unpublished opinion.

The appeal[1] before this Court concerns the admissibility of prosecution exhibit 5,

---

1. A third issue granted in this case was resolved against appellant by the decision in

*United States v. Mack*, 9 M.J. 300 (C.M.A. 1980).

$20 in United States currency. This bill, seized from the appellant's person at the time of his arrest, was purportedly employed by Criminal Investigation Division (CID) agents in monitoring an alleged sale of cocaine by the appellant to a fellow soldier, Specialist Four Gonzales, an informant. The Army Court of Military Review found the following facts with respect to this military police operation:

> On 19 April 1979, . . . [Specialist Four] Early, a CID Agent, was contacted by a confidential informant, . . . [Specialist Four] Gonzalez. Gonzalez told Early that he had been in contact with an individual in the 1st Signal Battalion who had offered to sell a packet of cocaine to him for $20.00. Early met with Gonzalez, searched him, and gave him a $20 bill to buy the cocaine. Before giving the $20 bill to Gonzalez, Early recorded its serial number.
>
> Gonzalez left and returned about ten minutes later with a packet of cocaine. He gave Early a description of the person from whom he had brought the cocaine including the fact that he was wearing a yellow jacket. He also told him that the seller was in Room 104 of Building 3200, Kleber Kaserne.
>
> Early did not write down the room number, but he and two other CID agents immediately went to Building 3200 and informed the unit commander that they were going to make an apprehension in his billets. Followed by appellant's company commander and, eventually, his platoon sergeant, . . . [Sergeant First Class] Lilly, the agents went to Room 104 only to find that there was a Room 104A and a Room 104B. They entered one of them and were told that the man they were looking for was in the other. The door to that room was locked. When Lilly knocked on the door, he was told that the people inside could not unlock the door. Lilly obtained a key and he, Early and one of the other agents entered the room. There were several persons in the room— the record does not disclose how many.

Early went directly to and apprehended and searched the appellant, the only person wearing a yellow jacket. Early testified he knew "which one [he] was." A $20 bill was found in appellant's jacket pocket. Its serial number was the same as on the bill Early had given to Gonzalez.

At trial the $20 bill was offered as an exhibit and received in evidence without objection.

One of the issues granted for review by this Court challenges the probable cause determination made by Agent Early prior to his apprehension of the appellant. *See* Article 7, UCMJ, 10 U.S.C. § 807; *United States v. Paige*, 7 M.J. 480, 484 (C.M.A. 1979). Acknowledging the fact that no objection was raised at trial to this determination, the appellant now asserts that it was plain error for the trial judge to admit the $20 bill seized incident to such an invalid apprehension. *See United States v. Hendrix*, 21 U.S.C.M.A. 412, 416, 45 C.M.R. 186, 190 (1972); *United States v. Dupree*, 1 U.S.C.M.A. 665, 670, 5 C.M.R. 93, 98 (1952). In particular, he asserts that there is insufficient evidence in this record of trial to show that Agent Early had probable cause to apprehend him as the *person* who sold drugs earlier that day to Gonzalez. *See generally United States v. Wilson*, 6 M.J. 214, 215 (C.M.A.1979). We disagree.

■ The record of trial provides sufficient evidence from which the trial judge could conclude that Agent Early had probable cause to apprehend the appellant for this offense. *Cf. United States v. Hendrix, supra.* The informant, Gonzalez, testified that he described the person of the appellant to Agent Early, the clothing he wore, including a yellow jacket, and the building and room number where the drug operator would be found. Agent Early confirmed that he had this information prior to his entry of the appellant's room which had the same number and was in the same building as that reported by the informant. Moreover, after some initial confusion caused by

the fact that there was both a room 104A and 104B, Sergeant Lilly stated to Agent Early that he knew a soldier with a yellow jacket lived in room 104B. The absence of a formal name and the fact that several persons in the barracks had yellow jackets does not undermine the reasonableness of the agent's conclusion that the offender was in room 104B. Although more specific details might have been afforded the military judge concerning this probable cause determination, their absence in the present case did not make the judge's admission of the evidence plainly erroneous (see generally United States v. Wilson, supra) or create any sua sponte obligation on his part to inquire further into the matter. Cf. United States v. Ross, 7 M.J. 174 (C.M.A.1979), and United States v. Graves, 1 M.J. 50 (C.M.A. 1975).

■ A related issue granted (9 M.J. 421) for review by this Court is whether:

THE MILITARY JUDGE ERRED IN RECEIVING INTO EVIDENCE PROSECUTION EXHIBIT 5 BECAUSE IT WAS THE PRODUCT OF A SEARCH CONDUCTED IN VIOLATION OF PAYTON V. NEW YORK [445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)] AND UNITED STATES V. DAVIS [8 M.J. 79 (C.M.A.1979)].

Nominally, the question asked is whether a military police officer with probable cause may enter a locked barracks room to arrest a soldier for a recent criminal offense without a formal arrest warrant. The search of appellant's person which produced the challenged evidence, the serial-recorded money, was incident to this arrest; thus its validity is dependent on the lawfulness of the entry and arrest. See generally United States v. Cordero, 11 M.J. 210 (C.M.A.1981). Counsel for appellant calls our attention to the decision of the Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the order of this Court in United States v. Davis, 8 M.J. 79 (C.M.A. 1979), and an opinion of the United States Army Court of Military Review in United States v. Jamison, 2 M.J. 906 (A.C.M.R. 1976). He assumes sub silentio that no

exigent circumstances existed in this case which would distinguish it from those cited. See Steagald v. United States, 451 U.S. 204, 211, 221, 101 S.Ct. 1642, 1647, 1652, 68 L.Ed.2d 38 (1981); Payton v. New York, supra 445 U.S. at 582–83, 100 S.Ct. at 1377–78. We do not agree and resolve this question in favor of the Government.

"The term 'exigent circumstances,' in conjunction with an arrest in a residence," has been defined as "a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Blake, 632 F.2d 731, 733 (9th Cir. 1980), quoting United States v. Flickinger, 573 F.2d 1349, 1355 (9th Cir. 1978), cert. denied, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978). In determining whether an arrest warrant is required, it is necessary to "evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." United States v. Brown, 540 F.2d 1048, 1055 (10th Cir. 1976), cert. denied, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977). The record of trial before us indicates that the entry and arrest of appellant without a formal warrant was lawfully justified as reasonable police action to preserve the evidence of appellant's recent crime. United States v. Santana, 427 U.S. 38, 45, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976) (Stevens, J., concurring); see generally 2 LaFave Search and Seizure, § 6.1 at 392–95 (1978).

More particularly, Agent Early was unexpectedly called by the informant around 1300 hours on the day of appellant's arrest. He was told that appellant and the informant had met in public on base a short time earlier. A sale of drugs had been proposed, the contraband exhibited, and arrangements made for a later transaction in a barracks room. As part of a field operation, Agent Early quickly set up a controlled buy by meeting the informant in a car outside the barracks, searching him and providing him with a $20 bill with recorded serial numbers. See United States v. Hackett, 638 F.2d 1179, 1184 (9th Cir. 1980).

Immediately after the transaction was completed in the barracks room, the informant returned the drugs to Agent Early where they were field tested.

At this point, Agent Early had ample cause to believe that the appellant had distributed drugs to the informant and that he now had the marked money in his possession. *See generally United States v. Cordero,* 11 M.J. 210 (C.M.A.1981). Moreover, in view of appellant's earlier conduct outside his room and relative speed with which the later transaction was accomplished, it was reasonable for the agent to conclude that the appellant was conducting an on-going drug operation and the marked money might be easily disseminated by way of other transactions. *See United States v. Santana, supra.* The immediate arrest of appellant was necessary to disable him from removing this evidence from his person in the course of his drug business. LaFave, *Search and Seizure, supra. See United States v. Hackett, supra; United States v. Kulcsar,* 586 F.2d 1283 (8th Cir. 1978). The facts of this case do not warrant a conclusion that Agent Early's field operation conduct rather than the nature of the appellant's drug business purposefully created these exigent circumstances. *See United States v. Curran,* 498 F.2d 30 (9th Cir. 1974).

Agent Early proceeded immediately to the appellant's barracks and informed his company commander of the situation. Then, accompanied by the company commander, he went to appellant's door, and being denied entry, unlocked the door and arrested appellant. Under all these circumstances, we perceive no violation of the Fourth Amendment. *See Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

Although I agree with Judge Cook that the absence of defense objection at trial waived appellant's right to raise some of the issues discussed in the principal opinion, I concur in full in that opinion's disposition of those issues.

COOK, Judge (concurring in the result):

In my opinion, appellant's failure to object to the admissibility of the evidence waived any issue as to the legality of his apprehension and search of his person. *United States v. Wilson,* 6 M.J. 214 (C.M.A. 1979). Thus, I need not now resolve the other issues raised by appellant before this Court. *See* my separate opinion in *United States v. Davis,* 8 M.J. 79 (C.M.A.1979). Accordingly, I join in affirming the decision of the United States Army Court of Military Review.