**UNITED STATES, Appellee,**

v.

**Specialist Eugene E. JACKSON, 344–70–6201, United States Army, Appellant.**

**ACMR 9100761.**

U.S. Army Court of Military Review.

29 May 1992.

For Appellant: Captain Teresa L. Norris, JAGC, (argued); Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Appellee: Captain Donna L. Barlett, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Pursuant to mixed pleas, the appellant was found guilty of absence without leave (three specifications), violating general regulations by possessing two military identification cards and by possessing drug paraphernalia, using cocaine, possession of marijuana and cocaine, possession of marijuana and cocaine with intent to distribute, larceny, and making and uttering worthless checks, in violation of Articles 86, 92, 112a, 121, and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, 912a, 921, and 923a (1982 and Supp. V 1987) [hereinafter UCMJ]. A general court-martial composed of officer and enlisted members sentenced the appellant to a bad-conduct discharge, confinement for seven years, forfeiture of $375.00 pay per month for seven years, and reduction to Private E1. The convening authority disapproved part of the findings regarding the "making and uttering bad checks" specification, approved the remaining part of the specification and the remaining findings of guilty, and approved only so much of the sentence as provides for a bad-conduct discharge, confinement for six years, forfeiture of $375.00 pay per month for six years, and reduction to Private E1.[1]

The appellant asserts a number of errors, three of which merit discussion. First, we must determine the lawfulness of a search conducted incident to the appellant's warrantless apprehension at his motel room. Second, we must decide if the military judge erred in ordering a post-trial resentencing proceeding by the same members after he learned that they had utilized improper voting procedures in initially determining a sentence. Third, we must de-

---

1. Both the adjudged and approved sentence incorrectly state the period of forfeitures in terms of years rather than months. See Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1003(b)(2) [hereinafter MCM and R.C.M., respectively].

termine if the military judge erred in failing to find, *sua sponte*, that two specifications alleging possession of illegal drugs and paraphernalia were multiplicious for sentencing purposes. We resolve the first issue in favor of the government, and resolve the second and third issues in favor of the appellant.

## I. The Seizures at the Days Inn Motel

### A. *Facts*

On 19 October 1990, the appellant had been absent without leave for a week and was a suspect in a previous unauthorized absence and a number of drug-related activities and thefts. That morning, housing officials and an accompanying military policeman entered the appellant's quarters after they had received an anonymous telephone call that someone was moving around in the quarters. The individual was the appellant who ran out the back door and eluded the military police. In a search of the quarters, pursuant to a subsequent search authorization by the hospital commander, drugs and drug paraphernalia were found.[2]

After eluding the police on 19 October, the appellant remained absent until he was apprehended at about 1720 hours on 18 November. On 18 November, after the appellant assaulted his girl friend in a room at a Days Inn motel in Montgomery County, Maryland, she reported the incident and his location to the appellant's commander who called an investigator of the Criminal Investigation Command (CID). The CID agent had information previously given by the appellant's estranged wife to another agent that the appellant had a .38 caliber handgun and that "he would be willing to use that handgun if we tried to apprehend him and that we should be very careful in apprehending him." The CID agent generally knew of the appellant's criminal activities and also knew that the appellant had a rented car in his possession, that the appellant had not returned the automobile to the

rental agency, and that it was about to be reported stolen.

The CID agent and his partner drove past the motel, noted that the rental car was not there and became concerned that appellant had disposed of the car and was about to flee. They then drove to the Montgomery County Police Department and requested a National Crime Information Center (NCIC) computer search for outstanding arrest warrants. No warrants surfaced; however, they knew that the computer information was not always up-to-date. Without obtaining a civilian arrest warrant, the CID agents, accompanied by local police, went to the Days Inn. After verifying that the appellant was registered there and after receiving an accurate physical description of him from the desk clerk, they donned "bulletproof vests," knocked on the appellant's door and identified themselves as motel employees, and attempted to lure him into opening the door to the room. The appellant did not open the door but unexpectedly looked out the window beside the door. Their true identities discovered, a CID agent pointed his weapon at the appellant through the window, told him to "freeze," and then ordered him to open the door. The appellant complied and the agents entered the room, searched the appellant and placed him in handirons. They searched the immediate area for the handgun and did a quick sweep to insure that no one was hiding in the room. The police saw drug paraphernalia, marijuana cigarettes and several military and dependent identification cards in plain view, and seized these items.

### B. *Trial Proceedings*

At trial, the appellant argued that *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and R.C.M. 302(e) required the police to obtain a warrant before apprehending him in his motel room.[3] The government argued exigent circumstances. The military judge found as fact, that a warrantless apprehension of the appellant occurred when the CID agent

---

2. These seized items are the basis of two separate charges and specifications which the appellant claims are multiplicious.

3. "Apprehension" is the taking of a person into custody, and is the equivalent of "arrest" in civilian terminology. R.C.M. 302(a) discussion.

**1148**

pointed his handgun at the appellant and ordered him to open the door. He concluded that this warrantless arrest at the appellant's motel room door was based on exigent circumstances and was lawful; and, the subsequent entry by the police and CID agents into the room and their seizure of items in plain view incident to that apprehension was lawful. We agree with the military judge.

## C. *Analysis*

██ The Supreme Court held in *Payton* that the Fourth Amendment prohibits the police from making a nonconsensual and warrantless entry into a person's home for purposes of making a felony apprehension, absent exigent circumstances. Warrantless searches and seizures of persons and property are presumptively unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also Payton*, 445 U.S. at 586, 100 S.Ct. at 1380. This Fourth Amendment prohibition against unreasonable searches and seizures of persons and property applies to hotel and motel rooms. *Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), *reh'g denied*, 386 U.S. 940, 951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967); *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, *reh'g denied*, 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964); *United States v. Standridge*, 810 F.2d 1034, 1036 (11th Cir.), *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987); *United States v. Bulman*, 667 F.2d 1374, 1383–84 (11th Cir. 1982), *cert. denied sub nom, Howard v. United States*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

██ An exception to the warrant requirement is the existence of "exigent circumstances." *Payton*, 445 U.S. 573, 100 S.Ct. 1371; *United States v. Rivera*, 825 F.2d 152, 156 (7th Cir.1987); *United States v. Phinizy*, 12 M.J. 40, 42 (C.M.A.1981); *United States v. Murray*, 12 M.J. 139, 141 (C.M.A.1981). A warrantless arrest under "exigent circumstances" is permitted when there is danger of destruction of evidence, there is a need to prevent a suspect's escape, or there is a risk of danger to the police or others inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Some examples of exigent circumstances include:

(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of the officers or the public.

*Standridge*, 810 F.2d at 1037 (citations omitted). A heavy burden of proof of demonstrating exigent circumstances is on the government. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984). If the government fails to meet that burden, all evidence seized pursuant to the warrantless entry and arrest is obtained illegally and must be suppressed at trial. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

██ In determining whether an arrest warrant should have been obtained, it is necessary "to evaluate the circumstances as they would have appeared to prudent, cautious and trained officers" based on what they knew at the time of the entry into the dwelling or motel room. *Phinizy*, 12 M.J. at 42 (quoting *United States v. Brown*, 540 F.2d 1048, 1055 (10th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977)). *See generally United States v. Marin–Cifuentes*, 866 F.2d 988 (8th Cir.1989); *United States v. George*, 883 F.2d 1407 (9th Cir.1989); *United States v. Santiago*, 828 F.2d 866 (1st Cir.1987); *United States v. Killebrew*, 560 F.2d 729 (6th Cir.1977). "[T]he determination of exigent circumstances is an objective one based on the totality of circumstances confronting law enforcement agents." *United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir.1990), *cert. de-*

*nied,* —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991).

Rule for Courts–Martial 302(e)(2) is based on *Payton v. New York. See* Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 302 analysis, app. 21, at A21–14.01. The rule prohibits anyone from entering a private dwelling to make a warrantless apprehension unless, *inter alia,* exigent circumstances as described in Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 315(g) and 316(d)(4)(B) [hereinafter Mil.R.Evid.] exist. "Private dwelling" includes hotel and motel rooms. *United States v. Ayala,* 22 M.J. 777, 790 (A.C.M.R.1986), *aff'd,* 26 M.J. 190 (C.M.A. 1988). Read together, Mil.R.Evid. 315(g) and 316(d)(4)(B) provide that exigent circumstances exist if there is a reasonable belief that the delay necessary to obtain a warrant would "result in the removal, destruction or concealment of the property or evidence sought." Further, probable cause must exist.

■ In the case before us, the appellant concedes (and we so find) that the police had probable cause to believe the appellant committed a number of criminal offenses and therefore had probable cause to apprehend the appellant. We also find that there were sufficient exigent circumstances to permit the appellant's warrantless apprehension at his motel room.[4] We find significant the number of offenses of which the appellant was suspected, the reasonable belief by the police that the appellant was armed, and the likelihood that the appellant might flee as he had done previously. Finally, we find danger to the public from any confrontation in the hallway, lobby or parking lot had the police merely set up surveillance while obtaining a warrant and had the appellant, thought to be

armed, attempted to leave his room in the interim. *See Standridge,* 810 F.2d at 1037. Under the circumstances, the warrantless apprehension of the appellant was reasonable and lawful.[5]

■ Having validly apprehended the appellant without an arrest warrant, did the police have authority to seize items in the room without a search warrant? In this case we find that they had the authority to make a "protective sweep" of the motel room for weapons and to insure that no one was hiding in the room. Mil.R.Evid. 314(g)(2) and (3); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *reh'g denied,* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969); *United States v. Bennett,* 908 F.2d 189 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); *Standridge,* 810 F.2d 1034; *United States v. Jones,* 696 F.2d 479 (7th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). In securing the premises, items of an illegal or contraband nature in plain view were subject to seizure. Mil.R.Evid. 316(d)(4)(C); *United States v. Rengifo,* 858 F.2d 800, 805 (1st Cir.1988), *cert. denied,* 490 U.S. 1023, 109 S.Ct. 1752, 104 L.Ed.2d 189 (1989); *Standridge,* 810 F.2d 1034. Accordingly, we hold that the military judge properly admitted into evidence the identification cards, drugs, and drug paraphernalia seized in the room.

## II. The Post-trial Sentencing Proceedings

### A. *Facts*

During the sentencing proceeding at trial, the military judge correctly instructed the members on the voting procedures that they were to use in adjudging a sentence. He told the members to vote the lightest

---

**4.** The military judge considered the "seizure" (apprehension) to have occurred while the appellant was inside the room and the police were outside pointing a gun at him through the window. We do not quibble with this finding. *See* R.C.M. 302(d)(1). However, if, *arguendo,* the actual seizure occurred on the threshold when the appellant opened the door, the result here is the same. *See generally United States v. Carter,* 31 M.J. 502, 506 (A.F.C.M.R.1990) (citing La-Fave, *Search and Seizure,* Sec. 6.1(e) at 590,

regarding the uncertain "metaphysical subtleties" involved in "in the doorway," "at the door," and "on the threshold" analyses).

**5.** We reject the appellant's theory that the exigent circumstances in this case were "created" by the government and existed only at the time the police agents knocked on the appellant's motel room door. *See, e.g., MacDonald,* 916 F.2d at 772.

proposed sentence first. Sometime after trial, the president of the court approached the deputy staff judge advocate and told him that the members had used the wrong procedure to vote: they had voted upon the proposed sentences beginning with the heaviest sentence and worked downward. When this matter came to the military judge's attention, he ordered a post-trial Article 39(a), UCMJ, session pursuant to R.C.M. 1102. The session took place almost a month after the court-martial adjourned. The members returned to the courtroom and the president of the court acknowledged the error. The military judge then declared a "mistrial as to the sentencing" and ordered a rehearing on sentence to correct the voting error. Specifically asked by the military judge if he had an objection to the procedure, the defense counsel replied in the negative. All sentencing witnesses from the original sentencing hearing (except the appellant's wife) reappeared and retestified as before.[6] Counsel reargued and the military judge again gave sentencing instructions. He instructed that the new maximum sentence was that imposed at the original sentence hearing: a bad-conduct discharge, confinement for seven years, forfeiture of $375.00 pay per month for seven years, and reduction to Private E1. After redeliberating on sentence, the members sentenced the appellant to exactly the same sentence as before.

The assignment of error implicates a number of different procedural rules. Those include voting procedures on sentencing (R.C.M. 1006), reconsideration of sentence by the members (R.C.M. 1009), post-trial Article 39(a), UCMJ, sessions (R.C.M. 1102(b)(2)), proceedings in revision (R.C.M. 1102(b)(1)), and mistrial procedures (R.C.M. 915).

### B. *Voting Procedures*

The practice of voting first on the least severe proposed sentence is at least one hundred years old, and was once discretionary. Colonel Winthrop commented on the practice in 1886:

"Where the sentences originally voted are found to differ, it has been an approved practice for the court to proceed to vote upon them in succession, beginning with the least severe, until one of them receives the vote requisite for its adoption." (footnote omitted). . . .

It may be remarked indeed that neither law nor regulation has prescribed any special routine to be pursued in the making up of the sentence. The usual form, as outlined above, is thus subject to variation at the discretion of the court, which may indeed, if it see fit, dispense with voting altogether and arrive at its conclusions by a comparison of views in an informal conversation.

W. Winthrop, *Military Law*, 551 (1st ed. 1886). Manuals for courts-martial as far back as 1898 (except for the 1928 Manual) have consistently provided for this voting procedure. *See United States v. Stevenson*, 29 C.M.R. 618, 619 (A.B.R.1960) and *United States v. Blair*, 24 C.M.R. 869, 871–72 (A.F.B.R.1957). In the 1951 and 1969 manuals, a mandatory provision for voting the lightest proposed sentence appeared in paragraph 76b(2). *But see Stevenson*, 29 C.M.R. 618 (not mandatory). A similar provision has been incorporated into the 1984 Manual in R.C.M. 1006(d)(3)(A).[7] Considered to be part of military due process and "more than a mere technicality," the failure to instruct on this voting procedure was held by the Court of Military Appeals in 1969 to be plain error requiring reversal. *United States v. Johnson*, 40 C.M.R. 148 (C.M.A.1969). In 1986, the Court of Military Appeals reassessed its approach and held that the failure to give the instruction

---

**6.** The wife's testimony, consisting of one-and-one-half pages in the record of proceedings, merely stated that the appellant had a drug problem. There was no explanation why she was not called at the sentence rehearing, no request for her, and no objection to her nonappearance.

**7.** R.C.M. 1006(d)(3)(A) provides in pertinent part that "[a]ll members shall vote on each proposed sentence in its entirety beginning with the least severe and continuing, as necessary, with the next least severe, until a sentence is adopted. . . ."

was not reversible error *per se*, and that the error must be evaluated against the entire record to determine whether plain error has occurred. *United States v. Fisher*, 21 M.J. 327 (C.M.A.1986).

### C. *Post–Trial Proceedings*

Rule for Courts–Martial 1102 provides in pertinent part:

(a) *In general.* Post–trial sessions may be proceedings in revision or Article 39(a) sessions. Such sessions may be directed by the military judge or the convening authority in accordance with this rule.

(b) *Purpose.*

(1) *Proceedings in revision.* Proceedings in revision may be directed to correct an apparent error, omission, or improper or inconsistent action by the court-martial, which can be rectified by reopening the proceedings without material prejudice to the accused.

(2) *Article 39(a) sessions.* An Article 39(a) session under this rule may be called for the purpose of inquiring into, and, when appropriate, resolving any matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence.

. . . .

(e) *Procedure*

. . . .

(2) *Action.* The military judge shall take such action as may be appropriate, including appropriate instructions when members are present. The members may deliberate in closed session, if necessary, to determine what corrective action, if any, to take.

■ Whether the military judge characterizes the session as a "post-trial session," as a "hearing in revision," or (as here) as a "mistrial on sentence" is not determinative of its nature. *United States v. Dorsey*, 26 M.J. 538, 540 (A.F.C.M.R.1988); *United States v. Scaff*, 26 M.J. 985, 988 (A.F.C.M.R.1988), *returned for DuBay hearing*, 29 M.J. 60 (C.M.A.1989). Rather,

we must look at its purpose and function. Proceedings in revision are limited to correcting errors that do not materially prejudice the substantial rights of the accused and that are not "substantive." R.C.M. 1102(b)(1); *United States v. Roman*, 46 C.M.R. 78, 81 (C.M.A.1972) (citing *United States v. Barnes*, 44 C.M.R. 223 (C.M.A. 1972)) [8]; *Dorsey*, 26 M.J. 538; *United States v. Silva*, 19 M.J. 501, 502 (A.F.C.M.R.1984), *aff'd*, 22 M.J. 343 (C.M.A.1986). Proceedings in revision cannot be used to reopen a case, or to consider newly-discovered evidence and then to change the findings or sentence. *Scaff*, 26 M.J. 985. Nor can proceedings in revision be used to correct a flawed instruction to the members. *Roman*, 46 C.M.R. 78; *Silva*, 19 M.J. 501. Such post-trial sessions have been used in numerous situations. *See United States v. Wilson*, 27 M.J. 555 (A.C.M.R.1988) (to hold a new sentencing proceeding because two members hadn't been sworn); *United States v. Feld*, 27 M.J. 537 (A.F.C.M.R.1988), *pet. denied*, 28 M.J. 235 (C.M.A.1989) (to resolve an ambiguity in the announced sentence); *United States v. Crowell*, 21 M.J. 760 (N.M.C.M.R. 1985), *pet. denied*, 23 M.J. 281 (C.M.A.1986) (to repeat the sentencing proceeding after the verbatim tape recording of proceedings was lost). *See also United States v. Timmerman*, 28 M.J. 531 (A.F.C.M.R.), *pet. denied*, 28 M.J. 356 (C.M.A.1989) (correction of an ambiguity in findings was "a classic case for proceedings in revision"); *United States v. Henderson*, 21 M.J. 853 (A.C.M.R.1986) (proceedings in revision could have corrected an ambiguity in the sentence had that option been used prior to the convening authority's action).

"A proceeding in revision, unlike a mistrial, does not amount to a withdrawal of the charges." *Wilson*, 27 M.J. at 558 (comparing R.C.M. 915(c)(1) with R.C.M. 1102(b)(1)). Therefore, a proceeding in revision may be ordered by a military judge without further action by the convening authority. *Id.*

---

**8.** *Roman* and *Barnes* interpret Article 62(b), UCMJ, 10 U.S.C. § 862(b). When the Code was rewritten in 1982, authority for proceedings in revision was incorporated into Article 60(e), 10 U.S.C. § 860(e). R.C.M. 1102 is based in large part on Article 60(e). *See* R.C.M. 1102 analysis, app. 21, at A21–69 and 70.

## D. *Sentence Reconsideration Procedures*

Rule for Courts–Martial 1009 provides a procedure by which the members may reconsider a sentence once announced. Reconsideration of a sentence is permitted at any time before the record of trial is authenticated. R.C.M. 1009. The only limitation is that the sentence cannot be increased. *Id.* Any member may propose that the sentence be reconsidered. *Id.* When the sentence is discovered to be ambiguous or illegal after adjournment, the military judge may call a session for reconsideration, at which time the military judge shall instruct on the procedures for reconsideration and the members shall vote by secret written ballot whether to reconsider their sentence. *Id.*

## E. *Mistrial*

■ Rule for Courts–Martial 915 permits the military judge to declare a mistrial when such action is manifestly necessary in the interests of justice, and a mistrial may be declared "as to the entire proceeding or as to only the proceedings after findings." R.C.M. 915. *See, e.g., United States v. Mora,* 22 M.J. 719 (A.C.M.R.1986); *United States v. Simonson,* 14 M.J. 752 (A.C.M.R. 1982).

## F. *Analysis*

■ In the present case, the members did not vote to reconsider their sentence as provided in R.C.M. 1009. Rather, the military judge, without defense objection, utilized the revision procedures of R.C.M. 1002 and ordered a complete resentencing proceeding. While he announced that he was declaring a "mistrial as to sentence," his actions indicate that it was a proceeding in revision. Our analysis is based on his actions and not on his characterization.

Unlike *Johnson, Fisher,* and *Silva,* there was no flawed instruction on voting procedure in this case.[9] The military judge correctly instructed the members to vote on the lightest proposed sentence first. The members simply misapplied the instruction during their deliberations on sentence. Even though the instruction was correct, the result was the same: the members used the wrong procedure in voting on the proposed sentence. We find that their failure to use the correct procedure in voting on the sentence was a "substantive error in the trial" as that term is used by the Court of Military Appeals in *Roman,* 46 C.M.R. at 81. Because the error was substantive, a proceeding in revision was inappropriate to correct the error. *Id.*

Even assuming, *arguendo,* that a revision proceeding was permissible here, it still was not appropriate in this case because we find that a different sentencing authority should have been used.[10] Our view is based on our understanding of human nature. Even though the members' selection of the same sentence at the revision proceedings was certainly within their discretion and even though the sentence itself is not unreasonable in this case, we are mindful of the tendency of human nature to adhere to a decision once made. We are not convinced that that tendency was dissipated by the one month interval between the original sentencing proceeding and the proceedings in revision.[11] The

**9.** Nor is this a situation in which the military judge erred by giving *no* instruction to the members regarding voting on the lightest proposed sentence first, an error which has been held not to be plain error. *Fisher,* 21 M.J. 327. And, unlike *Feld,* there was no ambiguity in the announced sentence in this case. We also view the members' voting error in this case as qualitatively different than the errors rectified by revision proceedings in *Wilson* and *Crowell.*

**10.** The military judge's characterization of "mistrial as to sentencing," although that characterization is not determinative in our decision in this case, inadvertently described the better course of action which he should have taken.

Declaration of a mistrial on sentencing under R.C.M. 915 would have required the convening authority to appoint an entirely new panel of members to adjudge the sentence.

**11.** We are impressed with the conscientiousness and sense of fairness of the president of the court-martial who brought the court-martial's error in voting procedure to the attention of proper authorities after trial. We also commend the military judge, who, when faced with a unique situation affecting the fairness of the trial, attempted to fashion a remedy that was fair to the appellant by limiting the sentence to that imposed at the original proceeding.

court in *Roman* recognized this same tendency when it observed that "[p]ermitting a *nunc pro tunc* 'correction' would offer a strong possibility of prejudice to the accused." *Roman,* 46 C.M.R. at 81. *See also* R.C.M. 1102(b)(1). Finally, we will not apply waiver despite the appellant's failure to object to the resentencing procedure.

In the appropriate case we have the authority to reassess the sentence in order to purge possible prejudice to the appellant. *See Fisher,* 21 M.J. at 329 (sentence reassessment by the court of military review was appropriate to purge any prejudice resulting from an error in voting instructions). In this case, we believe that the interests of justice would best be served by a sentence rehearing before a new sentencing authority.

### III. Multiplicity

 Evidence presented at trial showed that the drug paraphernalia and drugs were found in the same location at the same time. As such, the specifications alleging possession of drugs and possession of drug paraphernalia are multiplicious for sentencing. *United States v. Griffin,* 8 M.J. 66 (C.M.A.1979); *United States v. Hughes,* 1 M.J. 346 (C.M.A.1976). Even though this multiplicity issue was not raised at trial, waiver does not apply in this case because the evidence and the pleadings clearly show multiplicity. R.C.M. 1005(f); *United States v. Waits,* 32 M.J. 274, 275–76 (C.M.A.1991). Therefore, the military judge had a *sua sponte* duty to instruct the members that the two offenses were multiplicious for sentencing. His failure to do so was error. The multiplicity of these offenses for sentencing purposes should be considered by the sentencing authority at the rehearing on sentence.

Finally, the appellant notes that the convening authority erroneously credited him with 114 days of pretrial confinement credit instead of 141 days credit as ordered by the military judge. The government agrees that the correct number of days is 141. We will correct the error in our decretal paragraph.

The remaining issues, including those personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority. The appellant will be credited with a total of one hundred forty-one (141) days of pretrial confinement.

Senior Judge JOHNSON and Judge WERNER concur.