**UNITED STATES, Appellee,**

v.

**Private First Class Timothy M. BOLAND, 180–52–4258, United States Army, Appellant.**

CM 448266.

U.S. Army Court of Military Review.

15 July 1986.

---

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Major Marion E. Winter, JAGC, Captain Peter D.P. Vint, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Rehyansky, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before MARDEN, PAULEY and De GIULIO, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members. In accordance with his pleas, he was found guilty of one specification of distribution of marijuana on 18 April 1985 and one specification of distribution of marijuana and cocaine on 25 April 1985. He plead and was found not guilty of one specification of distribution of marijuana on 24 April 1985. He was sentenced to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances and reduction to E-1. Pursuant to a pretrial agreement the convening authority approved a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances and reduction to E-1.

This Court specified the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED BY ORDERING A DEFENSE REQUESTED POST-TRIAL ARTICLE 39(a), UCMJ, SESSION FOR THE PURPOSE OF INDIVIDUAL *VOIR DIRE* OF THE COURT MEMBERS BECAUSE OF ALLEGED FAILURE OF THE MEMBERS TO FOLLOW THE MILITARY JUDGE'S SENTENCING INSTRUCTIONS.

### II

WHETHER IT WAS ERROR FOR THE MILITARY JUDGE NOT TO INFORM THE COURT MEMBERS PRIOR TO SENTENCING THAT APPELLANT HAD ENTERED PLEAS OF GUILTY TO SEVERAL SPECIFICATIONS.

### III

ASSUMING THE MILITARY JUDGE DID NOT ERR, SHOULD THIS PROCEDURE BE THE PREFERRED METHOD OF HANDLING A CASE BEFORE COURT MEMBERS WHERE MIXED PLEAS ARE INVOLVED?

In response, we find the military judge committed harmless error in permitting the post-trial *voir dire* of the court members and that it was not error to withhold from the court members the fact that appellant had entered guilty pleas to several offenses. We further find the decision to refrain from informing the court members of guilty pleas is within the sound discretion of the military judge. When utilized, the practice of withholding such information should be rare, preferably only upon a defense request.

## I. Facts

At trial, appellant entered mixed pleas: guilty to distribution of marijuana on 18 and 25 April and not guilty to distribution of marijuana on 24 April. The military judge entered findings of guilty to the offenses to which appellant entered pleas of guilty. Subsequently, appellant, through counsel, requested that the court members not be informed of the guilty pleas until the contested offense was decided "for fear that ... they will draw an illegal inference from the information, [which] will enter into their deliberations and cause PFC Boland to be found guilty contrary to his pleas." The military judge acceded to the appellant's request and the court members were not informed of the pleas of guilty.

After more than a full day of trial, the court-martial found appellant not guilty of the contested drug distribution offense. The court members were then advised that appellant had entered pleas of guilty and had been found guilty of two other drug distribution offenses. The court-martial proceeded and appellant was sentenced. Appellant now complains that his original sentence to confinement for 20 years was "the longest sentence to confinement on drug charges by a jury on Fort Campbell in recent memory."

Just after the completion of the trial, several enlisted court members were engaged in conversation somewhere near the situs of the trial.[1] Captain (CPT) H *, a member of the U.S. Army Trial Defense Service, who had not been involved in any way with the case, sub judice, approached the group and, according to his own testimony entered the conversation in the following manner:

> I was checking the Trial Defense Service mailbox; and I had heard about the sentence being twenty years, and I walked over to them and I made some joking comments to the effect that apparently they were unable to acquit anyone unless I was the defense counsel. And we laughed....

He then had a lengthy discussion with the members concerning their deliberations on sentence. Captain H reported the substance of this conversation to the trial defense counsel, Major S, who was also the Trial Defense Service (TDS) Senior Defense Counsel. Major S requested a post-trial Article 39(a), Uniform Code of Military Justice (UCMJ), session stating as his reason: "[F]or the purpose of examining information ... indicating panel members misconduct. Specifically, it appears that at least two statements have been made by unidentified panel members indicating that the accused's announced sentence includes punishment, in part, for an offense of which he was acquitted." [2]

---

1. Although not clear in the record, it appears that the court members were near the door of a building occupied by either the Staff Judge Advocate's Office or Trial Defense Service. It is assumed that the members were there for the trial of another case.

* Corrected

2. We are concerned about the way the information was obtained which resulted in the request for the post-trial Article 39(a) session. Although the disclosure was arguably inadvertant, the conversation between CPT H and the court members revealed details of the members' deliberations. In United States v. McClain, 22 M.J. 124, 132 (C.M.A.1986), the Court of Military Appeals opined that a staff judge advocate has a legitimate interest in knowing what factors influenced a court-martial in order that improvements may occur in future cases and may for example, ask a court member whether trial counsel adequately presented his evidence or argued the case. Chief Judge Everett, writing for the Court in McClain, cautions that "only discussions reasonably designed to accomplish such improvements should take place." The opinion further states: "However, even in the civilian community, many courts seek to dissuade jurors from discussing with others the reason for their verdicts. In light of Article 51, we are sure that in military justice 'silence is golden,' insofar as discussions between court members and staff judge advocates are concerned." We believe this discussion should also apply to relationships between court members and counsel. It may be appropriate for defense counsel to query court members after trial as to how they might improve their performance, but we need not address that question now for that clearly is not the situation involving CPT H. It is evident that no such excuse exists on his behalf as he was not involved in this case in any way. Rather, he was playing the gadfly and criticizing the trial tactics of Major S. It is

The military judge granted the request, indicating in his order that "The matters set forth in the defense brief, if true, would be some indication the panel members may have refused or failed to follow the court's instructions." At the Article 39(a) session, Captain H [3] and the court members were called to testify. After the session, the military judge made findings of fact and conclusions of law. He found that:

a. Neither of the statements referred to in ENCLs 1 [CPT S' request for a post-trial session] & 3 [Defense brief for post trial Article 39(a) session] of AE XXV were made during the panel member's deliberation on a sentence.

b. Such statements, if made, were made during a post-trial discussion between CPT [H] and 1SG Mounce in the presence of SFC Ferrin and possibly one other panel member, CSM Sloan.

c. During the sentence deliberations, there were some expressions of hostility toward the parties to the trial.

d. The members expressions of hostility were based upon the members percep-

tion there had been wasted effort as a result of the bifurcated pleas in the case. He concluded that:

a. The statements alleged to have been made during deliberations but which were made, if at all, after the trial were not expressions of what the panel had done but rather were expressions of an impression or opinion by the speaker or the listener as to what may have happened.

b. The statements alleged were NOT extraneous prejudicial information or outside influence (RCM 1008) considered by the panel and had no effect upon the legal sufficiency of the sentence (RCM 1102(b)(2)).

c. The hostility in this case was no greater than in any other case in which panel members feel "put upon" by counsel's trial tactics or the judge's suppression rulings.

d. There is no evidence the hostility the panel felt toward counsel or the judge was translated into a greater sentence for the accused or that it had any

similarly clear that his conduct was ill-advised. We caution counsel, in general, that they should refrain from any discussion with court members that may result in a violation of the sanctity of the deliberation room. Indeed, we would advise counsel to seek a safer, and perhaps more meaningful critique from the military judge as opposed to court members.

3. Captain H's testimony differs strikingly from the conversation alleged in the defense brief which contains the purported statement of the unidentified court member as follows: "We initially considered giving him (the accused) 10 years but got so p——ed off at him (for withholding information on the guilty plea) that we gave him 20," and "If they hadn't put us through the not guilty bulls—t and pled to all of them (the charges) we'd probably have given him 3–5 (years)."

On this point, CPT H's testimony at the post-trial 39(a) session was as follows:

"So I joked with him [a court member] a minute and then I remarked to them that I believed that it was a mistake ... to not reveal at the outset of the trial that there were other charges to which he was pleading guilty to. And I don't remember the exact wording of what their response was. However, there was a lot of snickering and words to the effect that 'it

sure made a difference,' and that they felt like that they had been had when, after they acquitted Boland on the contested charge, that there was a sentencing phase. They felt as though they'd been had. And I told them that I had thought that that was a mistake and that I wouldn't have done it that way, that I would have told them up front, and on like that. And they indicated to me that a couple of members of the panel were genuinely irritated by the way that the defense counsel presented the case. And by that I mean the fact that it seemed like that it was hidden that Boland was pleading guilty until after they acquitted him on what to them was a related charge."

. . . .

"I definitely got the impression, both from the words that they used and their mannerisms that they punished Boland for all three offenses and that they thought it was less than honorable to have hidden from them the fact that he was pleading guilty to two very closely related charges."

. . . .

"It would be difficult for me to say exactly what was said, sir. I do not remember exactly what was said. All I remember was the substance of the conversation.... [T]hat's the impression that I got.... [A]nd I hesitate to swear that that's what they said."

effect upon the sentence adjudged. (RCM 1102(b)(2)).

## II. Ordering the Post-Trial 39(a) Session

■ It is a well-settled fundamental rule that testimony of jurors will not be received to impeach their verdict with respect to matters which essentially inhere therein. *United States v. Bourchier,* 17 C.M.R. 15, 27 (C.M.A.1954). Military Rule of Evidence 606(b) provides that a member may not testify as to any matter of statement occurring during deliberations or to the effect of anything on the members minds or emotions as influencing assent or dissent or mental process in connection with findings or sentence unless it involves extraneous prejudicial information, outside influence, or command control. *See also United States v. Bishop,* 11 M.J. 7, 8–10 (C.M.A. 1981); *United States v. West,* 48 C.M.R. 548 (C.M.A.1974); *United States v. Bourchier,* 17 C.M.R. 15, 26–28 (C.M.A.1954).[4]

The reason for the rule is to provide a balance between the necessity for accurately resolving criminal trials in accordance with rules of law and the desirability of promoting finality in litigation and the protection of members from harassment and second-guessing. *See* S. Saltzburg, L. Schinasi and D. Schlueter, *Military Rules of Evidence Manual* 284 (1981). The purpose of the rule is to prevent counsel from examining court members concerning whether they followed instructions or were emotionally influenced by some event at trial. *Id.* Simply said, the rule exists as a matter of policy to promote the orderly administration of the criminal justice system. We find that the subject matter of the post-tri-

al Article 39(a) session falls within the prohibitions of RCM 606(b).

■ Accordingly, we hold that the military judge erred in ordering the Article 39(a) session *voir dire* of the court members. Inasmuch as appellant requested the Article 39(a) session, we are loath to permit him relief from a matter originated by him and his counsel. Under the circumstances of this case we find the error to be harmless.

## III.

## Informing the Court of the Guilty Pleas.

### Is there a Preferred Method?

The remaining specified issues are so intertwined that we shall discuss them together. The practice of not informing court members of guilty pleas when other offenses are contested has been previously discussed by this Court in *United States v. Nixon,* 15 M.J. 1028, 1030–31 (A.C.M.R.), *pet. denied,* 17 M.J. 183 (C.M.A.1983). In *Nixon,* where mixed pleas of guilty and not guilty were entered, this Court held it was not error to inform court members of the fact that appellant earlier had plead and been found guilty of another offense. We continue to agree with that holding. We believe, however, that the *Nixon* decision contains some unfortunate language which is not necessary to the holding in the case. That language is as follows:

> While we find no error in this case, we believe that the practice of informing court members of the existence of a charged offense, and of a guilty plea and finding of guilty thereon prior to presentation of evidence on another charge to which an accused has pleaded not guilty

---

**4.** Military Rule of Evidence 606(b) specifically provides,

*Inquiry into validity of findings or sentence.* Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter of statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the mem-

ber's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

is an anachronism. We urge military judges to discontinue the practice in courts-martial. Whereas formerly court members were required to vote on a finding of a charge to which an accused had entered a plea of guilty, this is no longer true. No useful purpose is served by the continuation of such practice which merely provides a fertile area of assertion of error on appeal. The better course for a trial judge faced with pleas of both guilty and not guilty would be to delay informing the members of the guilty plea and finding until the sentencing portion when such knowledge is necessary to perform the sentencing function. [Footnote omitted.]

*Id.* at 1030–31. We disagree with this gratuitous advice to the trial judge and believe that such a firm policy is fraught with danger. The case, *sub judice,* is just such an example of the danger to an appellant in choosing such a tactic which appears to encourage gamesmanship.[5] We would offer our own advice to trial judges and encourage them to follow the more standard practice of informing court members of all pleas in all cases. Military court members are selected because of their high qualifications and are generally more capable of adhering to the requirements placed upon them at trial than the average juror. *See United States v. Matthews,* 16 M.J. 354, 383 (C.M.A.1983) (Fletcher, J., concurring in result); *United States v. Carter,* 22 M.J. 771, 776 (A.C.M.R.1986); *United States v. Lusk,* 21 M.J. 695, 699 n. 2 (A.C.M.R.1985); *United States v. Salisbury,* 50 C.M.R. 175, 189 (A.C.M.R.1975) (Donahue, J., dissenting). We believe that a well-functioning military justice system requires the confidence that court members will follow instructions. Our experience convinces us that court members carefully adhere to those instructions.

We believe, therefore, that, as a general rule, military judges should inform court members of pleas and findings of

guilty prior to presentation of evidence on another charge to which an accused has plead not guilty; and where members are so informed, they should be given instructions during the sentencing procedure. We further hold that information on pleas and findings of guilty should be withheld until after court members return findings on other contested offenses only in those rare instances where the accused requests the withholding of the information and where the military judge determines in his sound discretion that such a procedure is warranted. We further suggest that a withholding occur only after the military judge has determined from the trial defense counsel that such a trial tactic has been carefully considered. Once the request is granted, an appellant should not be heard to complain that because of such a decision he received an unfair trial.

We find no merit to appellant's original allegations of error. The findings of guilty and the sentence are affirmed.

Senior Judge MARDEN and Judge PAULEY concur.

**5.** One might reasonably conclude that the court members in the case *sub judice,* felt that trial defense counsel was "playing games" with them and responded in a negative manner at time of sentencing.