UNITED STATES

v.

**Albert P. MORERO, 570 74 4876, Gunnery Sergeant (E–7), U.S. Marine Corps.**

**NMCM 93 00014.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 31 Jan. 1992.

Decided 20 Oct. 1994.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT J.M. Kegelmeyer, JAGC, USNR, Appellate Government Counsel.

Before REED and ORR, Senior Judges, and McLAUGHLIN, J.

ORR, Senior Judge:

The principal issue presented in this case concerns the effect of contradictory instructions the military judge gave on the voting requirements for the threshold question of reconsidering a sentence. The appellant raises this issue in the first of two assign-

ments of error[1] as part of our review of his conviction under Article 66, Uniform Code of Military Justice [hereinafter "UCMJ" or "the Code"], 10 U.S.C. § 866.

Consistent with his pleas, the appellant was convicted of (a) twelve specifications of disobeying general regulations concerning the possession and transportation of ammunition, the importation of firearms and firearm parts and accessories, and the sale or transfer of firearms and ammunition to non-tax-exempt individuals in the Philippines; (b) three specifications of signing false U.S. Postal Service Customs Declarations that failed to disclose the presence of firearms, firearm parts and accessories and ammunition in overseas mail shipments; and, (c) one specification of soliciting another to violate a general regulation by transferring U.S. military property to a foreign national in violation, respectively, of Articles 92, 107, and 134, UCMJ, 10 U.S.C. §§ 892, 907, 934. A panel of eight officer and enlisted members sentenced the appellant to confinement for 3 years, forfeiture of $250.00 pay per month for 12 months, reduction to pay grade E–1, and a letter of reprimand.

## I.

Near the conclusion of a lengthy and vigorously contested sentence hearing where the maximum sentence to confinement exceeded 10 years, the members returned to the courtroom from their deliberations, announced they had a request for reconsideration, and asked for guidance. Record at 369. The military judge then embarked on the unenviable task of explaining the intricacies of voting on sentence reconsideration. The issue before us now, however, did not arise until the members began to ask questions and the following dialogue ensued:

MEMBER (Lieutenant Colonel Smith): What I'm confused is, if you reopen the balloting, is it then an affect then [sic] on what the new sentence could be?

MJ: No. If you reopen it again, then you go back to the rules I told you.

MEMBER (Lieutenant Colonel Smith): Even though it may end up that you originally went either for an increase or a decrease and you end up with something different in the opposite direction?

MJ: Yes, that's correct, but you just have to have the certain required concurrence that I've told you to do it again.

Yes, Captain Watson?

MEMBER (Captain Watson): Sir, if we reconsider to decrese [sic] the sentence and we get the three member vote to open it for reconsideration and then in our reconsideration the vote ends up being more severe than the initial vote was, that's allowable because we met the three member vote to reopen as long as the sentence is ultimately agreed upon by the six members, the majority?  . . . .

MJ: You can only vote with a view toward decreasing. You would have to go back and decide if you're voting to reconsider with a view toward increasing it or decreasing it. And if you're going to vote to increase it, you would have to have five. And if you vote to—if the proposal is to decrease it, then you have to have three.

TC: Sir, I believe the question is, once they have voted to reballot to reconsider the sentence, is the prior vote in any way controlling over what the ultimate sentence might be?

. . . .

MEMBER (Lieutenant Colonel Smith): In this case if the vote is accepted to reconsider in light of decreasing the sentence, then the court may not consider a sentence any more severe than the one that has already been agreed upon; is that correct, sir, or if the vote is open to consider lessening the sentence, then we cannot consider a sentence that is more severe than the one that has already been agreed

---

1. I. THE MILITARY JUDGE ERRED WHEN HE ERRONEOUSLY INSTRUCTED THE MEMBERS THAT IF THEY VOTED TO RECONSIDER A PORTION OF A SENTENCE, EITHER TO INCREASE THE SENTENCE OR DECREASE IT, THE MEMBERS WERE NOT BOUND BY THEIR EARLIER DETERMINATION.

II. THE SENTENCE OF A REDUCTION TO PAY GRADE E–1 AND A SENTENCE TO THREE YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE CONSIDERING THE CIRCUMSTANCES OF THIS CASE.

upon because the vote was to lessen the severity?

MJ: Quite frankly, some of the guidance we have is not a model of clarity in the judge's guide here and this is why I'm sitting here trying to ponder as to how to answer your specific questions. If you do as a result of you [sic] ballot on reconsideration get to the point where you've reconsidered, then you adhere to all my original instructions. So, you're basically starting all over again at that point. Any objection from counsel?

TC: Sir, that is my understanding of the law. Once they vote and take a reballot, then all sentences are open again.

MJ: That's my understanding. I'm not aware of any law to the contrary. Any objection from the defense to that?

DC: That's our understanding, sir.

Record at 371-72.

Conflicting guidance was obviously given concerning whether, once a vote had been taken to reconsider the previously agreed upon but unannounced sentence, a new sentence could be arrived at that was contrary to the view expressed in the request to reconsider. That is, as Lieutenant Colonel Smith tried to say it: (a) if a vote is taken and passed by the necessary number to reconsider the sentence with a view to *decreasing* it, can increased punishments also be considered and agreed upon? or (b) if the vote is taken and passed by the necessary number to reconsider the sentence with a view to *increasing* it, can lesser punishments also be considered and agreed upon? Earlier in the dialogue and consistent with his initial instructions, the military judge appears to answer both questions in the negative, but at the conclusion of his guidance, the judge appears to answer both questions affirmatively.

Since we do not know whether the members had a request to reconsider with a view to increase or a view to decrease, the appellant contends that his punishment may have been increased without the necessary majori-

ty agreeing to reconsider with that view. He suggests, in other words, that by allowing the members to believe they could reconsider the whole spectrum of punishments under the guise of a vote to reconsider with a view to only decreasing the previously agreed upon sentence—which would have only required the concurrence of more than one-third of the members [2] (three in this case)—his sentence could actually have been increased without the necessary majority (five members in this case) ever agreeing to reconsider with a view to increasing the sentence.

## II.

From the pleadings submitted to us on this issue, both the appellant and, to a limited extent, the Government appear to agree that, if the military judge's instructions permitted the members to reconsider the whole spectrum of punishments when they had only voted to reconsider with a view to reducing the sentence, those instructions were erroneous. The Government contends, however, that any error that resulted from the possible increase of the appellant's sentence following a vote to reconsider with a view of decreasing the punishment would be harmless because (1) at least two-thirds of the members would have to agree on the more severe punishment and (2) that means that at least the simple majority needed to reconsider with a view to increasing would have necessarily voted to do so if a formal vote was taken.

When we consider the Government's harmless error argument, however, the question arises whether any prejudice could ever occur in voting on reconsideration so long as the necessary majority (two-thirds, three-fourths, or unanimous) ultimately agreed upon the sentence announced. An accused would obviously not suffer prejudice if a sentence was decreased following a successful vote to reconsider with a view to increasing the punishment. And if he suffers no prejudice if the required majority (always equal to or larger than a simple majority) approve an increased sentence, as the Government now

---

2. In light of the sentence ultimately adjudged and to avoid what appears to be an unnecessary complicating factor, we have assumed that the previously agreed upon sentence did not include confinement for more than 10 years.

argues, what purpose is there in the different requirements for voting on requests to reconsider depending on whether it is with a view to increase or with a view to decrease the sentence?

Prior to the 1968 amendments to the Code any determination to reconsider a sentence required a majority vote. 10 U.S.C. § 852(c) (1964). The 1968 amendments lessened the required number of votes to reconsider a sentence with a view to decreasing the sentence by adding the following language to Article 52(c), UCMJ: "[A] determination to reconsider ... a sentence, with a view toward decreasing it, may be made by any lesser vote which indicates that the reconsideration is not opposed by the number of votes required for that ... sentence." Military Justice Act of 1968, Pub.L. No. 90–632, § 2(22)(B), 82 Stat. 1335, 1340 (codified as amended at 10 U.S.C. § 852(c) (1988)).

The Senate Armed Services Committee limited its explanation of this change to the following reference:

> Article 52 is further amended by adding to subsection (c) a provision whereby the members of the court may determine to reconsider ..., with a view to decreasing it, a sentence upon any vote which indicates that reconsideration is not opposed by the number of votes required for that ... sentence. This amendment is consistent with justice and fair procedure, for such a vote would indicate that at least one of the members who had voted for the finding or sentence now desires to reconsider the matter......

S.Rep. No. 1601, 90th Cong., 2nd Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4501, 4512–13. Neither the text of the amendment nor this brief explanation of its purpose addresses the status of the previously agreed upon sentence once a vote to reconsider has not been opposed by the necessary majority or minority. Is that previously agreed upon sentence a cap limiting the severity of any proposed punishments once it has been decided to reconsider with a view to decreasing the punishment? Does the previously agreed upon sentence then remain the sentence if, after reconsideration has been approved, all proposals voted upon to decrease the previous sentence fail to muster the necessary majority? If not, how long does the panel continue to reconsider if no proposal to decrease is approved? If a sentence is proposed that decreases one type of punishment, such as the type of discharge or the amount of forfeitures, but increases another type, such as confinement or reduction in rate, what criteria does the panel apply to determine whether that is an increase or a decrease in the sentence?

If Congress intended to broaden the opportunity for an accused to gain a reconsideration of a sentence with a view to decreasing it, it would appear that interpreting that opportunity as a limitation on the scope of reconsideration creates several ambiguities and increases the possibility of an impasse where a minority of the members could effectively block announcement of a previously agreed upon sentence. If, on the other hand, Congress did not intend to limit proposals once reconsideration had been affirmatively decided, the members would simply take up the whole question of punishments anew, without concern with whether each proposal was an increase or a decrease over the previously agreed upon sentence. In this latter view, the members would take up proposals seriatim, beginning with the least severe and continuing through to the most severe, until the necessary majority agreed on a sentence—just as the military judge indicated in his instructions here. The benefit to an accused in this interpretation would simply be that a minority of the panel, with the ostensible purpose of decreasing the sentence, could force reconsideration and reballoting where under the earlier version of the statute, a majority vote would have been required before *any* reconsideration could occur. In this situation, the accused would at least have a second chance for a reduced sentence, albeit with some risk that re-discussion would convince the necessary number to increase the sentence, when he or she would not have had that "second bite" before the statute was amended.

Although permitting reballoting on the entire spectrum of authorized punishments does not preclude a deadlocked panel, it would appear less likely. Compromises

could be considered without the difficulties of deciding whether the compromise was an increase or a decrease and without the technical formality of requiring a vote on a request to increase the sentence at the same time the panel is also considering decreasing the sentence.

### III.

Nevertheless, how ever we may view the practicalities of the matter, the President's guidance may have resolved the question whether the error occurred in this case. Following the 1968 amendments to the Code, the procedure prescribed for reconsidering a sentence in a trial before members provided that

[t]he question [of a proposal for reconsideration] shall be determined by secret written ballot, and a reballot on the sentence with a view to increasing it will be taken only if a majority of the members present vote in favor thereof; but a reballot on the sentence with a view to decreasing it will be taken if the vote therefor indicates that reconsideration is not opposed by the number of votes required for the sentence that was previously agreed upon.

M.C.M., 1969 (Rev.), ¶ 76*d* (emphasis omitted). The "only if" language was carried over to the 1984 Manual for Courts–Martial in subsection (d) of R.C.M. 1009, which states in pertinent part:

(3) *Number of votes required.*

(A) *With a view to increasing. . . .* [M]embers may reconsider a sentence with a view of increasing it only if at least a majority vote for reconsideration.

(B) *With a view to decreasing.* Members may reconsider a sentence with a view to decreasing it only if:

. . . .

(ii) In the case of a sentence which includes confinement for ... more than 10 years, more than one-fourth of the members vote to reconsider; or

(iii) In the case of any other sentence, more than one-third of the members vote to reconsider.

(4) *Successful vote.* If a vote to reconsider a sentence succeeds, the procedures in R.C.M. 1006 shall apply.

The procedures in R.C.M. 1006 describe generally how deliberations and voting on a sentence are to be conducted and was the framework for the judge's earlier instructions in the case now before us. Neither R.C.M. 1006 nor 1009 mention the status of the previously agreed upon sentence or the existence of a floor or a ceiling on sentence proposals once a vote to reconsider has succeeded. R.C.M. 1006 simply requires that sentence proposals be voted on beginning with the least severe and continuing with the next least severe until the necessary majority concur on a proposed sentence.

The use of the phrase "only if" in R.C.M. 1009(d)(3)(A) and (d)(3)(B) implies that members are not permitted to consider or vote upon a proposal to increase the severity of a sentence when the proposal was made and the necessary votes cast for reconsidering with a view to decreasing the punishment. This implication is supported by the discussion following (d)(3) of R.C.M. 1009, which states:

For example if six of nine (two-thirds) members adopt a sentence, a vote of at least five would be necessary to reconsider it to increase it; four would have to vote to reconsider in order to decrease it. If seven of nine (three-fourths) members is required to adopt a sentence, a vote of at least five would be necessary to reconsider to increase it, while three would be necessary to reconsider to decrease it.

### IV.

As the Government suggests, however, there is some authority for concluding that transgressing these rules, although error, may be harmless. In a case where the military judge gave an erroneous instruction on the procedure for reconsideration before the members closed for deliberation on sentencing, the U.S. Air Force Court of Military Review held that the error was harmless because such an instruction was not required at that stage of the proceeding, and as the Court described it:

The instruction here, in effect, told the members that they could reconsider any sentence reached by a two-thirds majority simply be deciding to revote on another sentence, but that the revoting would begin with the lightest proposed sentence and proceed upwards until a two-thirds majority was again reached. In theory, at least, the accused would, had this procedure been followed, have had "two bites at the sentencing apple."

*United States v. Staruska,* 4 M.J. 639, 641 (A.F.C.M.R.1977) (footnote omitted). The effect of the erroneous instruction given in *Staruska* is essentially similar to that which was given to the members in the case before us.

In a case before the U.S. Army Court of Military Review 5 years after *Staruska* was decided, that Court was "unable to conclude that the appellant [w]as not ... prejudiced" by the judge's incomplete instructions on reconsideration and set aside the sentence without expressly addressing the possibility of harmless error. *United States v. Vazquez,* 12 M.J. 1022, 1023 (A.C.M.R.1982). When the military judge in *Vazquez* examined the sentence worksheet prior to announcing the sentence, he discovered that the members had lined out the references to a dishonorable discharge and a bad-conduct discharge and entered the words "general discharge under less than honorable conditions." After advising the members that they could not order any other kind of separation except the two printed on the worksheet, the judge instructed them on the votes needed to reconsider with a view to increasing the sentence by adding a punitive discharge and told them that if they did not garner the number of votes needed to reconsider with a view to increasing the punishment they should return a sentence with no punitive discharge. He also advised the members that the other aspects of the sentence, except for the question of a punitive discharge, stood as they

appeared on the first worksheet.[3] No instructions were given concerning reconsideration with a view to decreasing the sentence. After further deliberations, however, the members returned a sentence without a punitive discharge but which both increased the amount of confinement and decreased the amount of forfeitures from that reflected on the first worksheet. In reaching the decision to set aside the sentence, the Army Court did not specifically address the possibility that, since (1) the members had been properly instructed on (a) the votes necessary to reconsider with a view to increasing the punishment, (b) the correct procedure to be followed in voting generally, and (c) the necessity for at least two-thirds of the members to agree on the sentence, and (2) the members has actually decreased at least one aspect of the sentence, any error may have been harmless.

Three months later, however, the same judge who wrote the opinion in *Vazquez* addressed the question whether a vote to reconsider was even necessary when the military judge initiated reconsideration. *United States v. King,* 13 M.J. 838 (A.C.M.R.1982). While concluding that no such vote was required, the Court added in a footnote:

> [E]ven if the members were required to vote on this question whether to reconsider even though reconsideration was initiated by the military judge, failure to ballot on the preliminary question whether to reconsider would have been a harmless procedural error in this case, since it is reasonable to expect that if two-thirds of the members voted to add a bad-conduct discharge, a simple majority would have voted to reconsider with a view toward increasing the sentence.

*Id.* at 841 n. 1 (dictum); *cf. United States v. Neeley,* 21 M.J. 606 (A.F.C.M.R.1985) (holding that an erroneous instruction on the number of votes necessary to reconsider a death

---

**3.** *Vazquez* touches upon but does not resolve the question concerning the status of the previously agreed upon sentence once a suggestion to reconsider has garnered the necessary affirmative votes. Although there is nothing in the Code or the Manual to suggest that a request to reconsider with a view to either increasing or decreasing a sentence should specify what aspect of the

sentence is to be either increased or decreased, there is nothing that prohibits such specificity. But whether we view the sentence as a whole or as specific punishments within a sentence, the question remains whether the previously agreed upon sentence or the various punishments within it retain any vitality once the members have decided to reconsider.

sentence was harmless in light of the fact that the subsequently announced sentence to life imprisonment was a mandatory minimum and that it was "inconceivable" that ancillary punishments would have been less than the maximum).

## V.

■ While we have indicated that Article 52(c) of the Code could be interpreted differently, we conclude that the President's guidance in R.C.M. 1009 does not permit members to consider any punishments increasing a sentence when a request for reconsideration with a view to *decreasing* the sentence has been made and accepted by the affirmative vote of less than a majority of the members. Consequently, the military judge erred when he indicated that the members could "start all over again" and consider the full spectrum of authorized punishments once *any* request for reconsideration had been accepted without regard to whether it was with a view to increasing or with a view to decreasing the sentence. Even if we view the judge's remarks in the entire context of the instructions he gave on reconsideration, as the Government urges, we disagree with the Government's contention that the members were properly informed about the voting procedure.

Nevertheless, we agree with the Government's contention that since the members were unequivocally told that at least two-thirds of the members had to agree on the sentence that was ultimately announced, even if the originally agreed upon sentence was increased following a sufficient minority vote to reconsider with a view to decreasing the sentence, at least a simple majority would have supported a vote to reconsider with a view to increasing the sentence. Since Article 52(c), UCMJ, and R.C.M. 1009(d)(3)(A) only require a simple majority to reconsider with a view to increasing a sentence, even if we assume the sentence was actually increased, it is obvious that the members would have voted for that sentence by a larger majority than would have been required to reconsider and a request to reconsider for the purpose of increasing the sentence would have received the necessary votes. Consequently, the failure to hold such a vote prior to considering and deciding on more severe sentence would be harmless.

## VI.

■ Even if we were not convinced that the error was harmless, the failure to object to an instruction before the court is closed to deliberate constitutes a waiver of the objection on appeal in the absence of plain error. *United States v. Fisher*, 21 M.J. 327 (C.M.A. 1986); R.C.M. 920(f). As we have noted, the appellant's trial defense counsel acquiesced in the judge's instructions in this regard, and unless the erroneous instruction constituted plain error, the appellant has no basis on which to claim relief. "In order to constitute plain error, the error must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" *Fisher*, 21 M.J. at 328 (quoting *United States v. Young*, 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1046 n. 14, 84 L.Ed.2d 1 (1985)). In this respect, the rationale that leads us to conclude that the instructional error was harmless also leads us to conclude that the mistake did not constitute plain error. So long as two-thirds of the members ultimately agreed upon the sentence that was announced, the possibility that a simple majority did not formally vote to reconsider with a view to increasing the punishment does not amount to a substantial error with an unfair, prejudicial impact.

## VII.

As to the appellant's second assignment of error, we find the sentence adjudged to be an appropriate punishment under the circumstances of this case.

Accordingly, the findings and sentence as approved below are affirmed.

Senior Judge REED and Judge McLAUGHLIN concur.