UNITED STATES, Appellant,

v.

Sergeant First Class Columbus BROOKS, Jr., 427–19–8811, United States Army, Appellee.

Army Misc 9401905.

U.S. Army Court of Criminal Appeals.

17 Feb. 1995.

For Appellant: Captain John P. Saunders, JAGC (argued); Colonel John M. Smith, JAGC, Major Lyle D. Jentzer, JAGC, Major James P. Calve, JAGC, Captain Joel B. Miller, JAGC, (on brief).

For Appellee: Captain Richard E. Burns, JAGC (argued); Major Fran W. Walterhouse, JAGC, (on brief).

Before GRAVELLE, JOHNSTON, and MOGRIDGE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Senior Judge:

This case involves a government appeal filed with this court pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 (1988) [hereinafter UCMJ]. The government appeals the decision of a military judge in a general court-martial to set aside the court members' announced finding of guilty, and his entry of a finding of not guilty instead. We must decide initially whether this court has jurisdiction to hear the government's appeal, and, if so, we must decide whether the military judge erred. We hold that we have jurisdiction to hear this appeal and that the military judge abused his discretion in this case by questioning the court members.

### I. Facts

On 21 October 1994, a general court-martial composed of officer and enlisted mem-

bers announced that they had found Sergeant First Class Brooks guilty of one specification of assault and battery and one specification of aggravated assault, in violation of Article 128, UCMJ. What occurred during and following the announcement of the findings by the court-martial president is the subject of the government's appeal.

Following deliberations on findings, the court-martial reopened for announcement of findings. The following transpired:

MJ: And, Major Dudley, I take it you have indeed arrived at findings?

PRES: Yes sir, we have come to an absolute majority on both charges—both specifications.

MJ: All right. Not a "majority," but by a two-thirds vote?

PRES: Yes, sir.

MJ: And it's reflected on the findings worksheet?

PRES: Yes, sir.

Following Major Dudley's announcement of findings of guilty of the Charge and both Specifications, the court recessed for two weeks before proceeding with the sentencing phase of trial. When the court reconvened, the following transpired:

MJ: Defense counsel, I understand you have a request of the court?

DC: Yes, Your Honor. The defense would request that the judge voir dire the panel president concerning the panel voting procedures that were applied during their deliberations. The defense is concerned about a comment made at the time the panel president reported his findings. And that comment was that "We have come to an absolute majority." The defense's concern is that perhaps there was an earlier vote with less than the required number, and that they subsequently took another vote to reach that, and we would like that clarified, Your Honor.

MJ: ... I believe you've correctly stated that there is an additional issue beyond whether there was a two-thirds vote, but whether there was an earlier vote, and based upon that, I will indeed, per your

request, voir dire Major Dudley, the president, on that point.

When the military judge questioned Major Dudley about the voting procedure, the president related how the members had voted by secret written ballot more than once as to each specification. Major Dudley testified that the members had agreed to conduct an initial informal vote prior to discussions "to find out where the panel members stood before discussions started, and to make sure that we would not go in circles, but to concentrate on where we needed to put our efforts." In this initial "straw" vote, at least two-thirds of the members voted to convict as to Specification 1, assault and battery, and less than two-thirds voted to convict as to Specification 2, aggravated assault. As a result of this "straw vote," the members engaged in extensive discussion regarding the second (aggravated assault) specification and "took several votes on Specification 2, until we finally came to the conclusion of guilty on Specification 2."

Because of Major Dudley's revelations, the military judge also questioned the remaining five members. All acknowledged that there had been a non-binding secret written "straw vote" as to both specifications, an additional and binding secret written vote of guilty as to Specification 1, and "five or six" secret written ballots as to Specification 2. No member testified that he felt pressured in voting on findings.

After questioning the members and hearing arguments of counsel, the military judge made findings of fact and conclusions of law, and took action as follows:

I do not have to address the issue of whether a straw ballot is appropriate or not in this case because the straw ballot with respect to Specification 1 of the Charge and what the members believed to be their ultimate finding was the same, a finding of guilty.

I also do not have to address [the appropriateness of a straw ballot] with respect to Specification 2 of the Charge because I find that the first real ballot of the members with respect to that specification of the charge was also consistent with their straw ballot, a finding of not guilty. It's

clear to the court that the panel members believed that they had to arrive—as Major Dudley's findings would indicate—at "an absolute majority." And an absolute majority in this case could only be achieved by four or more votes. When the panel members voted with respect to Specification 2 of the Charge, their vote was three-three. They did not follow the court's instruction that that amounted to a finding of not guilty, thus they continued to vote, and they continued to vote without requesting an instruction on reconsideration from the court. As such, the court has no option other than to grant a finding of not guilty. With that in mind, I find: Sergeant First Class Brooks, please rise.

(Accused, DC, and ADC stood) Sergeant First Class Brooks, this court finds you, not withstanding the announced verdict of the members, that you are:

## FINDINGS

### Not guilty of Specification 2 of the Charge.

I find that the members' findings with respect to Specification 1 of the Charge and the Charge was correctly announced; that finding is a finding of guilty of Specification 1 of the Charge.

Please be seated. [Parties complied]

Defense, your motion for a mistrial for sentencing purposes is granted. Trial counsel, I note that it is 11:50, on [Friday] 4 November. We will reconvene in this courtroom on or before 11:50 on this coming Monday, and if you've not advised me in writing by that time, I will assume there is no government appeal.

At an Article 39(a), UCMJ, session conducted on Tuesday, 8 November, the military judge acknowledged timely receipt the previous day of the government's written Request for Reconsideration and Notice of Intent to Appeal. After hearing the arguments of counsel, he denied the request for reconsideration. At that session, the military judge also emphasized that he had found that each of the subsequent votes following the initial "straw vote" was not intended by the mem-

bers to be a straw vote but was intended to be a "final vote."

Subsequently, the government filed its appeal pursuant to Article 62, UCMJ. In its appeal, the government asserts that we have jurisdiction to hear this appeal and asks us to decide the following two issues:

WHETHER THE MILITARY JUDGE ERRONEOUSLY IMPEACHED THE MEMBERS' FACIALLY VALID, ANNOUNCED VERDICT BY CONDUCTING A VOIR DIRE TO DISCOVER THEIR VOTING PROCEDURES.

WHETHER THE MILITARY JUDGE ERRONEOUSLY DIRECTED THE ENTRY OF A FINDING OF NOT GUILTY AFTER HOLDING THAT THE MEMBERS HAD FAILED TO FOLLOW HIS INSTRUCTIONS BY CONDUCTING SEVERAL "STRAW VOTES" BEFORE ARRIVING AT A FINDING OF GUILTY.

The government asks us to overturn the military judge's entry of a finding of not guilty to the aggravated assault specification and his declaration of a mistrial as to sentencing in this case.

Sergeant Brooks' counsel assert that this court lacks jurisdiction to hear this Article 62 appeal. Alternatively, if we find jurisdiction, counsel assert that the military judge did not abuse his discretion in this case.

## II. Jurisdiction

Article 62, UCMJ, states in pertinent part:

In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.... *However, the United States may not appeal an order or ruling that is, or that amounts to, a finding of* *not guilty with respect to the charge or specification.*

UCMJ, art. 62(a)(1) (emphasis added). Rule for Courts–Martial 908 [1] repeats the above language without elaboration, and the analysis of the rule in Appendix 21, MCM, 1984 (1994 ed.), at A21–54 provides no useful guidance. Likewise, Rule 2, Courts of Military Review [now Courts of Criminal Appeals] Internal Rules of Practice and Procedure merely restates the first part of Article 62, UCMJ, above.

In asserting that this court has jurisdiction, the government argues that the military judge's entry of a finding of not guilty was not really a "finding of not guilty" as contemplated in Article 62(a)(1), UCMJ, because the military judge's finding was not based on an evaluation of the evidence presented on the merits. His ruling, argues the government, was therefore an ultra vires act not barring the government appeal. Counsel for Sergeant Brooks argue that this court lacks jurisdiction because the language and intent of the military judge is plain, and the wording of Article 62(a)(1) is unambiguous in prohibiting appeals amounting to a finding of not guilty. We agree with the government's position.

■ For purposes of determining appealability of an order, the judge's own characterization of his action does not control the classification of the action. *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978), and cases cited therein. *See also United States v. True,* 28 M.J. 1, 3 (C.M.A.1989) (quoting with approval *Scott,* 437 U.S. at 96, 98 S.Ct. at 2196 and *United States v. Lee,* 786 F.2d 951, 955 (9th Cir. 1986)).

■ When an accused elects to be tried by members, only the members can be the fact-finders, only they can evaluate the evidence, and only they can make findings as to guilt or innocence.[2] Therefore, the military

---

1. Manual for Courts–Martial, United States, 1984 [hereinafter MCM], Rule for Courts Martial 908 [hereinafter R.C.M.].

2. The only exception is when the military judge grants a motion for a finding of not guilty under R.C.M. 917 when the judge evaluates the evidence and finds it insufficient as a matter of law.

Under R.C.M. 917, the motion for a finding of not guilty must be made and acted upon before findings by the fact-finder are announced. In such a situation, the issue of guilt or innocence never gets to the fact-finder. We do not have such a situation in this case.

judge's ruling has to be something other than a finding of not guilty. *United States v. Griffith,* 27 M.J. 42 (C.M.A.1988). *See also United States v. Kelly,* 14 M.J. 196, 199–200 (C.M.A.1982) (questioning a military judge's "purported" entry of findings of not guilty following a finding of guilty by members). We find his action to be tantamount to a dismissal of the charge with prejudice, which does not "amount to a finding of not guilty" as contemplated by Article 62(a)(1), UCMJ.

We hold that we have jurisdiction because the military judge's ruling effectively "terminat[ed] the proceedings with respect to a charge or specification." Article 62(a)(1), UCMJ.

■ Even though we have jurisdiction to hear this government appeal, there are limits on our authority imposed by Article 62, UCMJ. Unlike our broad powers to determine issues of fact and law under Article 66(c), UCMJ, when we consider a government appeal under Article 62, we may act only with respect to matters of law. UCMJ, art. 62(b); *United States v. Poduszczak,* 20 M.J. 627 (A.C.M.R.1985). "Our task is to decide whether the military judge correctly applied the proper legal standards and the correctness of his ruling as a matter of law." *United States v. Reinecke,* 30 M.J. 1010, 1015 (A.F.C.M.R.), *rev'd on other grounds sub nom, United States v. Strozier,* 31 M.J. 283 (1990).

■ We will overturn the military judge's findings of fact only when they are unsupported by the record or they are clearly erroneous. *United States v. Burris,* 21 M.J. 140, 144 (C.M.A.1985); *United States v. Batchelder,* 40 M.J. 655, 657 (N.M.C.M.R.), *aff'd,* 41 M.J. 337 (1994). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are 'fairly supported by the record.'" *Burris,* 21 M.J. at 144 (citing *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983)).

## III. Substantive Issues

### A. Law

Rule for Courts–Martial 922(e) states that "[e]xcept as provided in Mil.R.Evid. 606,[3] members may not be questioned about their deliberations and voting." Similarly, R.C.M. 923 prohibits the impeachment of members' announced findings except under very limited circumstances:

> Findings which are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear on any member, or unlawful command influence was brought to bear upon any member. ▫

Rule for Courts–Martial 923 is based on *United States v. Bishop,* 11 M.J. 7 (C.M.A. 1981), and *United States v. West,* 23 U.S.C.M.A. 77, 48 C.M.R. 548, 1974 WL 13855 (1974). *See* MCM, 1984 (1994 ed.), app. 21, R.C.M. 923 analysis at A21–65. Voting irregularities are *not* one of the three specific enumerated reasons for impeaching the members' findings.

While Rules for Courts–Martial 922(e) and 923 limit the questioning of members and impeachment of findings except under the three limited circumstances set out above, Mil.R.Evid. 606, using similar language, describes the limited circumstances when a member may testify as to the validity of the findings. Military Rule of Evidence 606(b) provides in pertinent part:

> *Inquiry into validity of findings or sentence.* Upon an inquiry into the validity of the findings ... a member may not testify as to any matter or statement occurring during the course of deliberations of the members of the court-martial ... except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence.

---

**3.** Military Rule of Evidence 606 [hereinafter Mil. R.Evid.].

The sound policy reasons underlying this rule have been recognized in the common law for over two hundred years and have been incorporated into Federal Rule of Evidence 606(b). *See generally Tanner v. United States,* 483 U.S. 107, 117–25, 107 S.Ct. 2739, 2745–50, 97 L.Ed.2d 90 (1987). Military Rule of Evidence 606(b) is taken from this federal rule with only one significant change: the military rule recognizes command influence as a legitimate subject of inquiry and permits testimony by a member on that subject. *See* MCM, 1984 (1994 ed.), app. 21, Mil.R.Evid. 606(b) analysis at A22–41.

Rule 606(b) is a "congressional compromise" which represents a "balance" between the "necessity for accurately resolving criminal trials in accordance with rules of law on the one hand, and the desirability of promoting finality in litigation and of protecting members from harassment and second guessing on the other hand." Stephen A. Salzburg et al., *Military Rules of Evidence Manual* 633 (3d ed. 1991).

Federal circuit court precedent is instructive in defining the standards and the limited parameters of inquiry into the members' deliberations. It is only after a "colorable claim" of juror misconduct is made that the trial judge has broad discretion to determine the type of investigation to be conducted. *United States v. Boylan,* 898 F.2d 230, 258 (1st Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). "The duty to investigate arises only when the party alleging misconduct makes an adequate showing ... to overcome the presumption of jury impartiality." *United States v. Ianniello,* 866 F.2d 540, 543 (2d Cir.1989) (quoting *United States v. Barshov,* 733 F.2d 842, 851 (11th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985), and *United States v. Winkle,* 587 F.2d 705, 714 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979)). Citing strong public policy reasons, the court in *Ianniello* observed that hearings into claims of juror misconduct "should be avoided whenever possible." *Ianniello,* 866 F.2d at 543. However, when there is "clear, strong, substantial, and incontrovertible evidence ... that a specific, nonspeculative impropriety

has occurred," the court must investigate. *Id.* (citing *United States v. Sun Myung Moon,* 718 F.2d 1210, 1234 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984) and *King v. United States,* 576 F.2d 432, 438 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978)). The scope of inquiry "should be limited to only what is absolutely necessary to determine the facts with precision." *Boylan,* 898 F.2d at 258 (quoting *United States v. Ianniello,* 866 F.2d at 544).

In *United States v. Perez–Pagan,* 47 C.M.R. 719, 1973 WL 14822 (A.C.M.R.1973), *pet. denied,* 23 U.S.C.M.A. 597, 48 C.M.R. 1000, 1974 WL 14415 (1974), we recognized the long-standing and sound public policy reasons for not prying open the deliberation room door. In *Perez–Pagan* we refused to consider an affidavit and other evidence showing that there had been an unauthorized vote reconsidering a prior not guilty finding without the required secret written ballot on the question of reconsideration. Citing *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), we said:

> The posture of ensuing federal law on this subject has not deviated from that enunciated in *Pless,* supra. It remains that a juror's testimony whether by affidavit or on the witness stand will be declared incompetent to substantiate any attempt to overthrow the process by which the jury arrived at a verdict.

*Perez–Pagan,* 47 C.M.R. at 722. *See also United States v. Witherspoon,* 16 M.J. 252, 253 (C.M.A.1983); *United States v. Bourchier,* 5 U.S.C.M.A. 15, 17 C.M.R. 15, 1954 WL 2578 (1954); *United States v. Boland,* 22 M.J. 886, 890 (A.C.M.R.1986), *pet. denied,* 23 M.J. 400 (C.M.A.1987); *United States v. Hance,* 10 M.J. 622 (A.C.M.R.1980); *United States v. Zinsmeister,* 48 C.M.R. 931, 935 1974 WL 13955 (A.F.C.M.R.1974); *United States v. Thompson,* 32 C.M.R. 776, 1962 WL 4596 (A.F.B.R.1962).

In a different context, the Navy–Marine Corps Court of Criminal Appeals has recently considered the prejudicial impact of a military judge's erroneous instruction on voting for sentence reconsideration. *United States v. Morero,* 41 M.J. 537 (N.M.Ct.Crim.App.

1994). The court's words, although they involve sentencing, are relevant to the case before us: "So long as two-thirds of the members ultimately agreed on the sentence that was announced, the possibility that a simple majority did not vote to reconsider with a view to increasing the punishment does not amount to a substantial error with an unfair, prejudicial impact." *Id.* at 543. We think the same can be said for announced findings.

The Court of Appeals for the Armed Forces recently discussed the issue of inquiry into the members' deliberative process in *United States v. Loving,* 41 M.J. 213 (1994). In *Loving,* a death penalty case, the court was presented with several affidavits indicating that the members had failed to follow the military judge's procedural instructions and had committed a series of procedural errors during their deliberations on sentence, including taking "straw votes." [4] *Id.* at 235. The court, citing *United States v. Accordino,* 20 M.J. 102, 105 (C.M.A.1985), and precedents from the Supreme Court and the federal intermediate appellate courts, held that the affidavits of the members "may not be considered except for the limited purpose of determining if extraneous influence or unlawful command influence may have been injected into the deliberations." *Loving,* 41 M.J. at 237.

Although the factual situation and timing of inquiry in *United States v. Thomas,* 39 M.J. 626, 631–36 (N.M.C.M.R.1993), is slightly different from that in the case before us, we find the reasoning, methodology, and conclusion of the Navy–Marine Corps Court of Military Review [now the Navy–Marine Corps Court of Criminal Appeals] in *Thomas* instructive. In *Thomas,* our sister court considered whether the military judge abused his discretion in refusing to ask the members how many times they had voted prior to announcement of findings. The Navy–Marine Court found no abuse of discretion because "[n]othing indicated that multiple votes

had occurred, and such questioning does not relate to the narrow, defined exceptions [of R.C.M. 922(e)] barring inquiry into the members' deliberations." *Id.* at 631.

Senior Judge Jones, dissenting in *Thomas,* points to *United States v. Jackson,* 34 M.J. 1145 (A.C.M.R.1992), an opinion of this court wherein we considered a case involving erroneous voting procedures on sentencing that were brought to the attention of the military judge by the president of the court-martial after the trial. *Thomas,* 39 M.J. at 651 n. 13. In *Jackson* this court considered and discussed the military judge's options in correcting the problem. Senior Judge Jones correctly notes that our court did not discuss the implications of Mil.R.Evid. 606(b) in *Jackson.* As *Jackson* focused on the remedy and did not address or discuss the problem giving rise to the remedy, that case should not be read as authority for inquiry into voting irregularities.[5]

### B. Analysis

At the outset we feel it important to note that the facts as set out above in this opinion show that there were irregularities in the voting procedure. Our first instinct is to correct that problem. That was also the military judge's reaction once the problem came to his attention. However, strong public policy reasons bar the military judge and this court in the present case from entering into the sanctity of the deliberation room to even discover the voting irregularity. Finally, even assuming that the voting irregularity demands redress, entry of a finding of not guilty was not an option available to the military judge.

■ In reviewing the law and precedents cited above, we find a clear distinction between inquiry into allegations of members' misconduct and inquiry into errors in the members' deliberative processes. As a general rule, when there are colorable allegations of the three categories of member misconduct described in Mil.R.Evid 606(b) and R.C.M. 923, inquiry is permitted; however,

---

4. "Straw votes," while not favored, are apparently permissible. *Loving,* 41 M.J. at 235 (citing *United States v. Lawson,* 16 M.J. 38, 41 (C.M.A. 1983)).

5. As the author judge of *Jackson,* I now see we may have been in error in focusing entirely on the remedy. Part II of *Jackson* should be read only for our discussion of the remedy fashioned by the military judge.

when there are allegations of errors in the members' deliberative processes, or other types of misconduct (such as those described in *Tanner*, 483 U.S. at 107, 107 S.Ct. at 2740), inquiry normally is not permitted.

■ We believe the military judge erred by questioning the court members in this case. Once the military judge confirmed that the findings were by two-thirds vote, that should have ended his inquiry. There is nothing in the court president's comment that "we have come to an absolute majority" that indicates member misconduct may have occurred.[6] We find as a matter of law that the comment does not amount to a "colorable claim" of member misconduct. Nor is the comment "clear, strong, substantial, and incontrovertible evidence" of the types of member misconduct enumerated in Mil.R.Evid. 606(b) that would warrant questioning of the members. There is no indication whatsoever of the existence of unlawful command influence or the presence of outside influence or information during deliberations. There is no indication in the record that the military judge on his own motion was raising such an issue. Indeed, our reading of the record shows no motivation for voir dire beyond inquiring about voting procedures. Further, there is nothing in the military judge's findings that shows his inquiry was directed at the evils enumerated in R.C.M. 923 and Mil. R.Evid. 606(b).[7] With no allegation or indication of command influence or extrinsic influence on the court's deliberations, there was simply no basis in law for the voir dire of the members in this case.

We find as a matter of law that the military judge violated the provisions of R.C.M. 922(e) and 923 by inquiring into the members' deliberative process in this case. We hold that the military judge thereby abused his discretion in conducting the inquiry as a matter of law.[8] In short, the military judge in this case had no legal basis to intrude into an area that public policy, the Manual for Courts–Martial, and precedent have severely limited.

■ Even assuming arguendo that there was a colorable claim of member misconduct of the three types listed in R.C.M. 923 and Mil.R.Evid. 606(b) and further assuming that the military judge did not abuse his discretion in deciding to question the members, we would still find that he erred as a matter of law when he went beyond the questioning permitted by R.C.M. 922(e), R.C.M. 923, and Mil.R.Evid. 606(b). The military judge was limited to three categories of questions: was there extraneous prejudicial information brought to the attention of any member; was there any outside influence improperly brought to bear on any member; and, was there unlawful command influence. *Loving*, 41 M.J. at 237; *Accordino*, 20 M.J. at 105. Assuming that the military judge had a basis for inquiry, he abused his discretion when he inquired beyond these questions.[9]

■ Likewise, in reviewing this government appeal, we will consider the testimony of the members for the limited purpose of answering the three questions discussed in

---

6. There is nothing in the court president's comment to suggest even that improper voting procedures may have occurred. We see no ambiguity in the phrase "we have *come* " used by the court-martial president. Indeed the phrase is analogous to the language used by the military judge in this case: "Have you *arrived* at findings" (emphasis added).

7. We believe that, because of the strong public policy protecting the deliberations of the members and the narrow grounds for such inquiry, prior to making such an inquiry a military judge should document in the record his basis and reasoning for making such inquiry. His basis should include specifically which ground under R.C.M. 923 and Mil.R.Evid. 606 he is relying upon for initiating the inquiry. Further, we believe that the military judge alone, with input

from counsel, should actually conduct the limited questioning permitted by law.

8. We do not reach the issue of deciding if the military judge's findings of fact and conclusions of law are correct as a matter of law. His error of law was in granting the motion to question the members in the first place.

9. Under limited circumstances not present here, an inquiry may possibly be tolerated to ensure compliance with Article 51(a), UCMJ. In *United States v. Greene*, 36 M.J. 1068 (A.C.M.R.1993), we were confronted with a military judge who erred by failing to instruct the members on voting procedures. There, we permitted an affidavit for the limited purpose of ensuring that the voting was by secret written ballot.

the previous paragraph. Having done so, we find no evidence of the three evils described in R.C.M. 923 and Mil.R.Evid. 606(b). Having determined as a matter of law that there was no evidence of outside influence, outside information, or unlawful command influence, we go no further. We find that all other information presented at the Article 39(a), UCMJ, session was and is incompetent evidence.

So what becomes of the military judge's entry of a finding of not guilty? Rule for Courts–Martial 917(a) implicitly prohibits a military judge in a court-martial with members from overruling the court's findings and entering findings of his own. In *United States v. Griffith*, 27 M.J. 42 (C.M.A.1988), the Court of Military Appeals [now the Court of Appeals for the Armed Forces] recognized that a military judge had the authority to *set aside* a finding of guilty *based on his evaluation that the evidence was legally insufficient.*[10] We do not have that situation here.

We hold that the military judge's entry of a finding of not guilty, based on incompetent evidence and without authority in the Uniform Code, the Manual for Courts–Martial, or case law, was an ultra vires act. The findings of guilty as announced in open court by the members, as the fact-finders in this case, remain in effect.

Finally, we are asked by the government to set aside the military judge's declaration of a mistrial for sentencing. Under R.C.M. 915(a), a "military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." The mistrial may apply "as to the entire proceeding or as to the proceeding after findings." *Id.*

We find nothing in the record before us that indicates that the members cannot fairly adjudge a sentence in this case. However, we realize the limitations of reviewing a sterile record. There may be facts arising in the past or which will arise during the pendency of this government appeal that make a mistrial appropriate. Our action in this case should not be construed as a limitation on the military judge's authority; he continues to have the discretion to grant relief under the standards of R.C.M. 915. We believe it appropriate to conditionally set aside his declaration of a mistrial for sentencing and return the record to him with authority, if counsel desires, to revisit his decision regarding a mistrial.

The government's appeal pursuant to Article 62, UCMJ, is granted. The rulings of the military judge in setting aside the finding of guilty of Specification 2 of the Charge, entering a finding of not guilty of Specification 2 of the Charge, and declaring a mistrial as to sentencing are vacated. The findings of guilty as announced by the members remain in effect. The record is returned to the military judge for proceedings not inconsistent with this opinion.

Judge JOHNSTON and Judge MOGRIDGE concur.

---

10. We also recognize that in a later opinion, Chief Judge Everett used the term "finding of not guilty" in reference to a military judge's authority in situations where the evidence is legally insufficient. *United States v. Scaff*, 29 M.J. 60, 65 (C.M.A.1989).